# Exhibit F

1

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------x

In Re:

                      Case No. 18-42802-NHL

NORTHFIELD 30 CORP.

               Debtor

-------------------------------------x

                  May 2, 2022
                  1:07 p.m.

        DEPOSITION of DUSTIN BOWMAN, taken by
the attorneys for Tompkins Avenue Inc., pursuant
to Order, held via web conference on the above
date and time, before Maureen McCormick, a Notary
Public of the State of New York.

2

1

2    A P P E A R A N C E S :

3

4    HASBANI & LIGHT, P.C.
     Attorneys for Tompkins Avenue Inc.
5         450 Seventh Avenue, Suite 1408
          New York, New York 10123
6
     BY:   DANIELLE LIGHT, ESQ.
7

8    BIOLSI LAW GROUP P.C.
     Attorneys for the Witness
9         111 Broadway, Suite 606
          New York, New York 10006
10
     BY:   STEVEN BIOLSI, ESQ.
11

12
     ALSO PRESENT:
13
                 MARK ANDERSON
14
                 RICHARD MASIN, Court Reporting Intern
15

16

17

18

19

20

21

22

23

24

25

3

1

2

3

4          IT IS HEREBY STIPULATED AND AGREED, by and

5     between the attorneys for the respective parties

6     herein, that filing and sealing be and the same

7     are hereby waived.

8          IT IS FURTHER STIPULATED AND AGREED

9     that all objections, except as to the form of the

10    question, shall be reserved to the time

11    of the trial.

12         IT IS FURTHER STIPULATED AND AGREED that the

13    within deposition may be signed and sworn to

14    before any officer authorized to administer an

15    oath, with the same force and effect as if signed

16    and sworn to before the officer before whom the

17    within deposition was taken.

18

19

20

21

22

23

24

25

4

1

2          THE REPORTER:  It is hereby stipulated

3     and agreed by and between counsel for all

4     parties present that pursuant to Federal

5     Rule of Civil Procedure 28 (a)(2), this

6     deposition is being conducted remotely and

7     that the court reporter shall be permitted

8     to administer the oath to the witness via

9     videoconference.  The witness and all

10     counsel are in separate remote locations and

11     participating via Zoom, telephone or any Web

12     conference meeting platform under the

13     control of Bee Reporting Agency, Inc.

14          It is further stipulated that this

15     videoconference will not be recorded in any

16     manner and that any recording without the

17     express written consent of all parties shall

18     be considered unauthorized, in violation of

19     law and shall not be used for any purpose in

20     this litigation or otherwise.

21          Before I swear in the witness, I will

22     ask each counsel to stipulate on the record

23     that I, the court reporter, may swear in the

24     witness even though I am not physically in

25     the presence of the witness and that there

5

1

2          is no objection to that at this time, nor

3          will there be an objection at a future date.

4                  (Attorneys agree.)

5                  THE REPORTER:  Mr. Biolsi, can you

6          represent to the best of your knowledge and

7          belief that the witness appearing today via

8          Web conference is, in fact, Dustin Bowman?

9                  MR. BIOLSI:  The irony of the

10         question.  Of course.

11

12          *          *          *          *

13

14  D U S T I N   B O W M A N ,

15         called as a witness, having been first duly

16         sworn by the Notary Public, was examined and

17         testified as follows:

18  EXAMINATION BY

19  MS. LIGHT:

20         Q.    What is your name?

21         A.    Dustin Bowman.

22         Q.    Where do you reside?

23         A.    My business address is 80-02 Kew

24  Gardens Road, Suite 600, Kew Gardens, New York

25  11405.

6

1                          D. Bowman

2        Q.     My name is Danielle Light, and I'm an

3    attorney representing the creditor, Tompkins Avenue

4    Inc.  This is a deposition.  I'm going to probably

5    skip a few of the rules because I have a feeling

6    you are familiar with them, but this is a

7    deposition in which I will ask you questions, and

8    you must answer them truthfully.  If you don't

9    understand my question, please feel free to say

10   so, and I will rephrase it.

11             Before the deposition can be used in

12   court, you will have the opportunity to read over

13   it and correct any mistakes.

14             Do you understand the rules so far?

15       A.     Yes.

16       Q.     Please answer the questions verbally.

17   If the answer is yes or no, please say yes or no.

18   Please do not answer with non-verbal cues.  The

19   court reporter will not be able to record

20   non-verbal cues.

21             If you don't understand a question,

22   again, please just let me know, and I'll rephrase.

23             Please state your name for the record.

24       A.     Dustin Bowman, B-O-W-M-A-N.

25       Q.     Have you taken any medication, drugs

7

1                          D. Bowman

2    or had any alcohol today that would impair your

3    ability to testify?

4          A.    No.

5          Q.    Have you ever had your deposition

6    taken before?

7          A.    Yes.

8          Q.    How many times?

9          A.    Twice.

10         Q.    And in what kind of cases were you

11   previously deposed?

12         A.    In the first one was on or about some

13   year -- a long time ago in result to a collections

14   case of somebody that was not me.

15              (Discussion off the record.)

16         A.    The second deposition was related to a

17   specific performance action in which there were

18   two contracts.  I wasn't the -- the contract

19   vendee or vendor.

20         Q.    Have you ever been arrested before?

21         A.    No.

22         Q.    Have you ever been convicted of a

23   crime?

24         A.    No.

25         Q.    So you mentioned those two lawsuits.

8

1                     D. Bowman

2    So have you ever been sued before?

3         A.    ████

████        ███        ████████████

████        ███        █████████████████

        ███████████████████████████

        ████████████████    ███████████

        ███████

████        ███        ████████████████

███    ███████████████████

███        ███        ███████████████

███    ██████████████████████

13        Q.    Do you know what case you're here to

14    testify about?

15        A.    Yes.

16        Q.    And what's the name of that case?

17        A.    In Re:  Northfield.

18        Q.    Do you know why you were subpoenaed to

19    appear and testify in this case?

20        A.    I don't.

21        Q.    How did you prepare for this

22    deposition?

23        A.    I reviewed the exhibits that were sent

24    to me.

25        Q.    Have you ever signed any written

9

1                         D. Bowman

2    statements about the events related to this case?

3              MR. BIOLSI:  Can you focus on that --

4         objection.  Just focus in a little bit.

5         Q.    Have you ever -- well, did you

6    previously sign subpoena responses related to this

7    case?

8         A.    I believe so.  You'd have to throw it

9    in front of me to be sure.

10        Q.    Have you ever posted on the Internet

11   or social media about Northfield 30 Corp.?

12        A.    Not that I remember.

13        Q.    And can we go over -- I'm just giving

14   an introduction.  I'd like go over what you did to

15   prepare for this deposition, so you said you

16   reviewed the exhibits.

17             Did you review anything else in

18   preparation for this deposition?

19        A.    No.

20        Q.    And how did you find your attorney?

21        A.    Mr. Biolsi and I have been colleagues

22   for twenty years.  I respect him as an attorney.

23   I consider him a friend, as well.

24        Q.    And who is paying your attorney to

25   attend the deposition today?

1                       D. Bowman

2               MR. BIOLSI:  I truly don't know if

3           that's an appropriate question.  I wouldn't

4           want to object, but I don't want to be

5           obstructionist.

6               MS. LIGHT:  I just want to know if

7           he's paying -- well, if you guys have a

8           friendly relationship, and you're

9           representing him, that's fine, but if he has

10          somebody else paying the bill, I'd like to

11          know who's paying it.

12      A.      So thus far, no payment has been

13  rendered.  I've offered payment to Mr. Biolsi.

14  It's unclear whether he'll accept.  I can either

15  pay him or I'll give him a large gift basket, but

16  it's not clear.

17      Q.      I would do the same thing to Mr.

18  Biolsi if he was representing me.

19              And did you meet with Mr. Biolsi

20  before today's deposition to discuss this case?

21      A.      No.  No, I have spoken with him.  I

22  have not met him personally.

23      Q.      If you need to take a break at any

24  time, tell me, and we'll take a break, and the

25  only exception is that if we're in the middle of a

1                      D. Bowman

2   question, I just ask that we -- we finish the

3   answer, you finish responding, and then we can

4   take that break.  Okay?  All right.

5            So my next question is:  Are you

6   currently employed?

7        A.    Yes.

8        Q.    And by whom are you employed?

9        A.    Employed by Shiryak Bowman -- employed

10   is a tricky question, but I am -- I work for and

11   receive payment from Shiryak Bowman Anderson Gill

12   & Kadochnikov.

13            (Discussion off the record.)

14        Q.    And are you a partner at the law firm?

15        A.    Yes.

16        Q.    How long have you been a partner?

17        A.    Since its formation in 2018.

18        Q.    Are you affiliated with and Anderson

19   Bowman & Zalewski PLLC?

20        A.    I -- could you repeat the question,

21   please, or can I have it read back?

22        Q.    Are you affiliated with Anderson

23   Bowman & Zalewski PLLC?  I don't know how to

24   pronounce that name?

25        A.    I mean, I'm not following my own rules

12

1                          D. Bowman

2    of the deposition, and I'll give you a full

3    answer, which is no, and the reason is because

4    that corporation no longer in existence, but I was

5    affiliated with them until the time it closed.

6         Q.    And then are you affiliated with

7    Shiryak Bowman Anderson Gill & Kadochnikov LLP?

8         A.    Right.  As we discussed, yes.

9         Q.    Because the first one you didn't say

10   LLP, so I thought they were separate entities.

11        A.    No.

12        Q.    So it's one entity, and are you

13   affiliated with Anderson Bowman -- am I saying

14   your name wrong?  Is it Bowman or Bowman?

15        A.    Either way, but Bowman is how I

16   pronounce it.

17        Q.    Bowman.  Anderson Bowman PLLC?

18        A.    Yes.

19        Q.    And what is that law firm or what is

20   that entity?

21        A.    It's a law firm.

22        Q.    It's still open?

23        A.    Yes.

24        Q.    Do you do business through that

25   entity?

13

```
 1                    D. Bowman

 2              Are you still representing -- I'll

 3   rephrase.

 4              Are you representing clients through

 5   Anderson Bowman PLLC?

 6         A.    No.

 7         Q.    What kind of company is Anderson

 8   Bowman PLLC?

 9              MR. BIOLSI:  I believe I just told you

10        it's a law firm.

11         Q.    It's a law firm, but it's -- is it --

12   like, are you operating under Anderson Bowman

13   PLLC?

14         A.    So am I operating under it?  I don't

15   understand the question.

16         Q.    I'm not trying to trick you.  Let me

17   just get that on the record.

18              I'm just trying to figure out, do you

19   have clients that you are representing them under

20   this Anderson Bowman PLLC?

21         A.    No.

22         Q.    Is there a reason why you left this

23   entity open?

24         A.    Yes.  Can we with permission go off

25   the record for a moment?
```

1                     D. Bowman

2               MS. LIGHT:  That's fine with me.

3               MR. BIOLSI:  I'm good with that.

4               (Discussion off the record.)

5         Q.    I'm going to skip my next question.

6               What does your role entail as a

7    partner?

8               MR. BIOLSI:  In which place?

9               MS. LIGHT:  Shiryak Bowman Anderson

10        Gill & Kadochnikov.

11        A.    I would describe myself -- I don't

12   know if everyone would agree -- as the chief

13   litigator in the firm, who does most of the

14   substantive appearances in regards to almost every

15   case.

16        Q.    Go ahead.  You want to say something

17   else?

18        A.    No.

19        Q.    Fine.

20               So do you oversee clients in general?

21        A.    So I don't understand the question.

22        Q.    Do you -- you said you're the chief

23   litigator.

24               So does that mean that you're involved

25   in clients of all of the attorneys in your law

15

```
 1                    D. Bowman
 2   firm?
 3        A.    No.
 4        Q.    So which cases do you oversee then?
 5        A.    Anderson is in charge of the quiet
 6   title and foreclosure cases.
 7              When a foreclosure or quiet title case
 8   goes to a trial or hearing, I will typically take
 9   over at that point, but that may not be universal.
10   I don't know.
11              And then I would say with all the
12   other cases and I handle from start to finish.  Is
13   that the question?  I'm sorry, I lost -- I lost
14   the place of the question.
15        Q.    We can move on.
16              Do you as part of your role as
17   partner at -- can we call it the law firm?  When I
18   say the law firm, I only mean Shiryak Bowman
19   Anderson Gill & Kadochnikov.  Is that okay for
20   everybody?
21        A.    Yes.
22        Q.    So is it part of your role to bring in
23   clients, new clients?
24        A.    Yes.
25        Q.    And how do you normally find new
```

16

1                    D. Bowman

2    clients?

3         A.    As far as I'm concerned, it's a

4    miracle.  Every day my phone rings somehow.

5         Q.    What would you say is the primary area

6    of practice for your law firm?

7         A.    Real property litigation.

8         Q.    And I understand that you are a

9    partner, but do you answer to anybody at your law

10   firm?

11        A.    No.

12        Q.    And I'd like to go into now your

13   firm's practices and procedures for bringing in

14   new clients.

15             So you said your phone just rings.

16   Does your firm advertise?

17        A.    I don't believe so.

18        Q.    And then you said your phone rings

19   again.  My question was who makes the initial

20   contact.

21             So it sounds like your phone is

22   ringing.  Prospective clients contact you; is that

23   correct?

24        A.    It is correct that prospective clients

25   contact me, yes.

17

1                         D. Bowman

2        Q.    And when you speak with a prospective

3   client, you know, when they call for the first

4   time, what would you say is the sum and substance

5   of a conversation?

6              MR. BIOLSI:  Assuming that he's the

7         one that takes the call for the first time?

8              MS. LIGHT:  I'm only talking about --

9         yeah, when he takes the call, and then I

10        guess we can go into, you know --

11       A.    I don't know.

12       Q.    You don't know.

13             And is it like an initial consult, you

14   start talking about facts of your case --

15       A.    Yes.

16       Q.    -- or would you say it's just a setup

17   of a meeting to meet in person?

18       A.    It can go either way.

19       Q.    And do you think that -- well, I can't

20   ask that.  Take that back.

21             Does the firm have like procedures in

22   place for new prospective client intake?

23       A.    I don't know.

24       Q.    When you get the initial phone call

25   from a client, do you meet in person?

18

1                          D. Bowman

2        A.    Sometimes.

3        Q.    How often would you say after the

4   initial consult do you meet in person with a

5   prospective client?

6        A.    I don't know.

7        Q.    And when you -- let's just say you are

8   meeting with a person.  Where do you meet with

9   them?

10       A.    My office.

11       Q.    Would it be part of your process to

12  ask for identification of a person walking in for

13  the first time?

14       A.    No.

15       Q.    And then you once you've met with a

16  person or you've held that initial phone -- we'll

17  call it intake -- who prepares the retainer

18  agreement?

19       A.    It would typically be a paralegal.

20       Q.    And once you've prepared the retainer,

21  who discusses it with the prospective client?

22             Let's say you took the initial phone

23  call.  Your paralegal prepared the retainer.

24             Do you then send an email to the

25  prospective clients with the retainer?

19

1                         D. Bowman

2         A.    It's so -- sorry.  I don't understand

3    the question.

4               Are you asking whether it's me who

5    personally sends out the email or whether it's a

6    paralegal that sends it out or something

7    different?

8         Q.    That's exactly what I'm asking.

9         A.    Okay.  So that would vary on a

10   case-by-case basis.  There's rhyme or reason why

11   it would vary, but sometimes I'll handle the

12   retainer to the person in person, sometimes it

13   will be email, sometimes it would be mailed on

14   rare occasions.

15        Q.    That's fine.

16              And then after you get a retainer

17   signed, do you ever meet with that client in

18   person?

19        A.    Sometimes.

20        Q.    Under what circumstances would you

21   meet with a client in person?

22        A.    There's no defined circumstances.

23        Q.    Are there ever circumstances where you

24   never meet with a client in person?

25        A.    Yes.

20

1                          D. Bowman

2          Q.    When you retain a client, how do you

3    verify the facts that your client told you about

4    their case?

5          A.    It varies.  Sorry, Steven.

6          Q.    And then how do you verify your

7    complaints to have accurate facts?

8                MR. BIOLSI:  I want to object to that.

9          You're assuming something that might not

10         necessarily --

11               MS. LIGHT:  So I'll back up.

12         Q.    Do you verify the facts that a client

13   presents to you to determine whether they're

14   accurate?

15               MR. BIOLSI:  I think that question

16         assumes a responsibility.  I don't know.

17         Assumes a responsibility that might not

18         necessarily be his.

19         Q.    Okay, but, I mean, let's just say --

20   let's say there is no legal responsibility to

21   verify the facts.

22               Can we do that and just say, like, is

23   there a chance that you verify the facts or do

24   people walk in the door and facts aren't verified?

25         A.    So it would depend on the

21

```
 1                    D. Bowman
 2   circumstances.
 3         Q.    Okay, fine.
 4               Can you clarify what those set of
 5   facts might be?
 6         A.    So sometimes it's easy to verify a
 7   fact.  If somebody says if something happened on a
 8   certain date, and I might look at the calendar and
 9   see that it was a Sunday and say are you sure, and
10   sometimes it's not easy to verify facts, because
11   it's in the sole knowledge of the -- of the
12   client.
13         Q.    I understand, okay.
14               And when you're at a point in a case
15   where you need an affidavit signed, does the law
16   firm -- and again the law firm that I'm referring
17   to is Shiryak Bowman Anderson Gill & Kadochnikov,
18   does the firm have a procedure in place to have
19   clients execute affidavits?
20         A.    It may.
21         Q.    It may, okay.
22               Do you require clients to come in to
23   sign affidavits in person to our office?
24         A.    No.
25         Q.    Have you ever been -- going back to
```

```
 1                    D. Bowman
 2   your -- I guess to you as an attorney personally,
 3   have you ever been subject to disciplinary
 4   proceedings by the bar association?
 5              MR. BIOLSI:  Hold on.
 6        A.    No.
 7              MR. BIOLSI:  Hold on.
 8              THE WITNESS:  Sorry, Steven.
 9              MR. BIOLSI:  That's okay.
10        A.    No.
11        Q.    I'm going to ask.  He's on the line.
12   Do you know Mark Anderson?
13        A.    Yes.
14        Q.    How did you meet Mark?
15        A.    He was employed by a firm of which I
16   was a manager on or about 2010.
17        Q.    And what was the name of that firm?
18        A.    Steven Zalewski & Associates.  And I'm
19   not sure if it's an LLP or LLC.
20        Q.    But what is his role at your law firm?
21        A.    When you say his, you're referring to
22   Mark Anderson or Steven --
23        Q.    Sorry, yes.
24        A.    You're asking what Mark Anderson's
25   role is regarding SBAGK?
```

23

                            D. Bowman

1

2      Q.    Yes.

3      A.    Mark Anderson is in charge of the

4  client title and foreclosure cases, and he also

5  deals with a lot of the law firm management stuff

6  that I don't like to deal with.

7      Q.    And is he a partner at your law firm?

8      A.    He is.

9      Q.    Does he answer to anybody else at the

10 firm?

11     A.    No.

12     Q.    Does he have face-to-face contact with

13 clients?

14     A.    Yes.

15     Q.    Does he speak directly with clients?

16     A.    Sometimes.

17     Q.    And Matthew -- I don't know how to say

18 his last name, R-O-U-T-H.

19           I'm going to ask the same questions.

20 So how did you meet him?

21     A.    He was employed by a firm of which I

22 was a partner.

23     Q.    What was the name of that firm?

24     A.    Likely was Anderson Bowman & Zalewski.

25     Q.    How long have you known him?

24

```
 1                    D. Bowman
 2        A.    I don't know.
 3        Q.    Does he answer to you?
 4        A.    Yes.
 5        Q.    And does he answer to anybody else at
 6   the firm?
 7        A.    Mark Anderson.
 8        Q.    Does he have face-to-face contact with
 9   clients?
10        A.    Sometimes.
11        Q.    Does he speak directly with clients?
12        A.    Sometimes.
13        Q.    And would you say that his title is
14   just an associate or something else?
15        A.    Associate.
16        Q.    How many attorneys do you employ at
17   the law firm?
18        A.    Nine or ten.
19        Q.    How many years have you been an
20   attorney admitted to practice in New York?
21        A.    I believe since 2003.
22        Q.    And are you admitted to practice in
23   any other state?
24        A.    Minnesota, but I'm suspended as a
25   reason of in activity, not as a reason of any
```

25

```
 1                    D. Bowman

 2  disciplinary action.

 3          Q.    That's fine.

 4               Now we're going to get back to the

 5  specifics of this particular case.

 6               Do you know the name of the owner of

 7  the debtor which is Northfield 30 Corp.?

 8          A.    I'm sorry.  Could you repeat the

 9  question, please, or have it read back?

10          Q.    I can just say it again.

11               Do you know who owns Northfield 30

12  Corp.?

13          A.    No.

14          Q.    Do you know somebody named Ilan David

15  Avistedek?

16               So I'll ask the question again.  Do

17  you know somebody named Ilan David Avistedek?

18          A.    I don't know.

19          Q.    Do you know whether Ilan Avistedek

20  owns Northfield 30 Corp.?

21          A.    I don't know.

22          Q.    I'm just going to refer to him by his

23  last name going forward so we don't have to say

24  the whole thing, so I'm going to refer to him as

25  Avistedek throughout this deposition.
```

26

```
 1                    D. Bowman
 2            Are you -- have you ever -- I'm sorry.
 3   Have you ever represented A&Q Estates?
 4        A.    I don't know.
 5        Q.    Have you ever heard of the name A&Q
 6   Estates?
 7        A.    I don't know.
 8        Q.    Have you ever heard of a company
 9   called Q&O Estates?
10        A.    Yes.
11        Q.    Have you represented Q&O Estates?
12        A.    I don't know.
13        Q.    So I'm going to ask this, but I
14   probably know the answer.
15            Do you know who owns Q&O Estates?
16        A.    I don't know.
17        Q.    Have you ever represented Q&O
18   Development?
19        A.    I don't know.
20            So if you want to throw documents in
21   front of me, that may -- but --
22        Q.    I'm going to throw documents down the
23   line.  I'm just trying to lay -- like I'm going to
24   go in order what I think makes sense.
25        A.    Okay.
```

1                        D. Bowman

2        Q.    So then we will just go through this a

3    little bit faster.

4              Are you familiar with a company called

5    M&Q Estates?

6        A.    I don't know.

7        Q.    Do you know somebody named David

8    Cohen, C-O-H-E-N?  Did you hear me, Dustin?

9        A.    I'm sorry.  I thought you were talking

10   to the reporter.

11       Q.    I was asking do you know somebody by

12   the name of David Cohen, C-O-H-E-N?

13       A.    I don't know.

14       Q.    Can I ask why you don't know?

15             MR. BIOLSI:  You can ask, but --

16       A.    I just -- I -- first of all, as I'm

17   sure with you, I meet so many people on my

18   day-to-day, right, so my memory for names isn't

19   great anyway, and then you -- the crux of what

20   you're talking about seems to be that there is

21   some ambiguity of identity, which was also

22   throwing an additional ambiguity at me.

23       Q.    We'll keep going then.  I understand.

24             So I'm going to ask now, do you know

25   somebody named David Cohan, which is spelled

28

1                        D. Bowman

2    C-O-H-A-N?

3         A.    I don't know.

4         Q.    Do you know somebody that uses the

5    name David Cohan, C-O-H-A-N?

6         A.    So I am aware that there are people

7    with names similar to that, who we have

8    represented in certain cases, but I don't know --

9    well, I don't know if I know that particular

10   person, if I met that person.

11        Q.    Okay, all right.  So I'm going to show

12   you what has been marked Exhibit A, which is --

13             MS. LIGHT:  I'd like to have the A

14        marked as Creditor Exhibit A.

15             (Creditor Exhibit A, Retainer

16        Agreement, marked for identification.)

17             MR. BIOLSI:  As a reminder, Danielle,

18        he has them.

19             MS. LIGHT:  Okay, whatever works for

20        everybody.  If he wants to look at it

21        separately, that's fine, but I feel like

22        this way -- I don't know.  However you guys

23        want to work it is really fine with me.

24             I will leave it up on the screen, and

25        then he can look at it on his own monitor,

29

1                         D. Bowman

2        if he wants.

3        Q.    So can you please tell me what this

4   document is?

5        A.    A retainer agreement.

6        Q.    And can you tell me what the date of

7   this document is?

8        A.    It appears to be May 27, 2017, from

9   the face of the document.

10       Q.    I couldn't tell if that was May 1 or

11  May 27, so that's fine.

12             And who is the client that this was --

13  or prospective client that this was given to for

14  execution?

15       A.    It was -- I don't know who it was

16  given to, but it was signed purportedly by David

17  Cohan, C-O-H-A-N.

18       Q.    Before the date of this retainer,

19  which I think you said was April 27?

20       A.    May.

21       Q.    Or is that May 27?  Sorry.

22             Did you ever represent David Cohan?

23       A.    I don't know.

24       Q.    Do you know how David Cohan came to

25  know about your firm?

1                          D. Bowman

2          A.     I don't know.

3          Q.     Do you know if somebody referred him

4     to you?

5          A.     No, I don't know.

6          Q.     Have you ever represented anybody you

7     referred to your firm by David Cohan?

8                 MR. BIOLSI:  Ask again.  What was

9          that?

10         Q.     Have you ever represented somebody

11    that was referred to you by David Cohan?

12         A.     I don't know.

13         Q.     Do you know approximately how many

14    cases you handled or matters -- I'm sorry, matters

15    meaning transaction or litigated matters for David

16    Cohan?

17         A.     I don't know.

18         Q.     Do you recall meeting David Cohan or

19    somebody you might have believed to be David Cohan

20    in person?

21         A.     No.

22         Q.     Did you speak with David Cohan on the

23    telephone?

24         A.     Not to my recollection.

25         Q.     How did you communicate with David

```
 1                     D. Bowman
 2  Cohan?
 3        A.    I'm not sure I ever did.
 4        Q.    Do you know who at your law firm
 5  communicated with David Cohan?
 6              MR. BIOLSI:  I object.  That assumes a
 7        whole bunch of events.
 8              MS. LIGHT:  Let me rephrase.
 9        Q.    Do you know whether anybody in your
10  law firm communicated with David Cohan?
11        A.    So I -- I don't know.
12              I mean, communicated -- so
13  communicated with would be like speaking or
14  writing to a person, and so I don't know if anyone
15  ever communicated with David Cohan.
16              My guess is, even though you haven't
17  shown me documents, that we drafted documents for
18  execution by David Cohan, which were in fact
19  executed.
20        Q.    So I don't know that to be the case,
21  so I don't want to assume anything, but we're --
22              MR. BIOLSI:  Did the court reporter
23        get that?  Mr. Bowman said -- I forgot what
24        you said.
25              (Discussion off the record.)
```

32

1                       D. Bowman

2       Q.    Before preparing this retainer

3   agreement, did you communicate with David Cohan?

4       A.    Pointing out that this retainer

5   agreement is from seven years ago, I don't

6   remember.

7             MR. BIOLSI:  We're not holding him to

8        his math, I don't think.

9             THE WITNESS:  Am I wrong?  Five years?

10       I apologize.

11      Q.    Going back to the setup of your law

12  firm, do you have specific attorneys assigned to

13  specific clients?

14      A.    No.

15      Q.    When you retain a new client, such as

16  David Cohan, do you gather -- generally speaking,

17  do you gather background information regarding

18  their phone number, address?

19      A.    Sometimes.

20            Can we go off the record for a second?

21  I want to take a break.

22            MS. LIGHT:  Sure, no problem.

23            (Recess taken.)

24      Q.    Is there a reason why your retainer

25  agreement doesn't include an address for Cohan?

33

1                          D. Bowman

2               MR. BIOLSI:  Objection.  That assumes

3          it's needed.

4          Q.    Do your retainer agreements generally

5     include a mailing address for a client?

6          A.    Sometimes.

7          Q.    Is there a reason why an address would

8     not be included?

9          A.    I don't know.

10              MS. LIGHT:  Maureen, can we -- I'm

11         sorry.  Do you want to maybe give me

12         control, because I do want to scroll down

13         just to show them the two matters that he

14         handled or just --

15         Q.    Do you see those two matters on the

16    retainer agreement?

17         A.    Yes.

18         Q.    After representing Cohan, did -- let

19    me back up.

20              Did you represent -- did your office

21    represent Cohan on the two matters listed on the

22    retainer agreement?

23         A.    I don't know.

24         Q.    And do you know whether there were any

25    subsequent amendments to this retainer agreement?

34

```
  1                     D. Bowman

  2        A.    I don't know.

  3        Q.    Your office didn't include a privilege

  4   log.  Do you know why there are those big black

  5   sections on the retainer agreement?

  6        A.    It covers up some boilerplate

  7   language, which is of no import, but also our fee

  8   structure.

  9        Q.    Do you know how many cases your law

 10   firm currently has where you represent David

 11   Cohan?

 12        A.    I really don't.

 13        Q.    Do you know how many cases your law

 14   firm has resolved for David Cohan?

 15        A.    I don't.

 16        Q.    Do you know how David Cohan pays your

 17   legal bills?

 18             MR. BIOLSI:  You mean like with a

 19        check or money order?

 20             MS. LIGHT:  Right, or like a wire.

 21        A.    It's -- it's -- can I have the

 22   question read back, please?

 23             (Question read.)

 24             MR. BIOLSI:  I think that assumes that

 25        he's paying.  Have we gotten there?
```

35

```
 1                    D. Bowman

 2        A.    I really don't know.

 3        Q.    I'd like to show you another exhibit.

 4              MS. LIGHT:  It is listed as A 1,

 5        Exhibit A 1 in the file that I sent over.

 6        I'd like to have this marked.

 7              (Creditor Exhibit A 1, Check No. 1951

 8        marked for identification.)

 9        Q.    Well, do you recognize this document?

10   Do you know what this is?

11        A.    It's a check.

12        Q.    Do you know who this is -- what bank

13   account this check was written from?

14        A.    It appears to be a bank account for

15   Q&O Estates Corp.

16        Q.    Do you know the name?  Do you know who

17   signs this check?

18        A.    I do not.

19        Q.    Do you know what case this was related

20   to?

21        A.    I don't.

22        Q.    And based on the memo that says Dick

23   Bailey Service Inc., do you know whether this was

24   for an appeal?

25        A.    It is likely reimbursement for
```

1                       D. Bowman

2    appellate printing fees related to a certain case,

3    which I don't know.

4         Q.    Do you know if your office received

5    any other payments from Q&O Estates?

6         A.    I don't know.

7         Q.    Does your office use MyCase as its law

8    office management system?

9         A.    Yes.

10        Q.    Do you use it to track payments

11   usually?

12        A.    I don't believe we do.

13        Q.    Does your office have any law office

14   management system that it uses to track payments?

15        A.    So we use MyCase for keeping track of

16   work done on cases.  I believe that we use MyCase

17   for some payment tracking, although it is far from

18   reliable the way that we use it.

19             So does that answer the question?  I'm

20   not sure.

21        Q.    So yeah, it answers the question.

22             (Discussion off the record.)

23        Q.    So I'm sorry.  Could we go back?  I

24   don't remember you answer.

25             Did you say that your office uses

```
 1                     D. Bowman
 2   another system to track payments?
 3         A.    We do not.  I'm just pointing out that
 4   we're not -- we're working on it.  We're getting
 5   better at using MyCase for payment tracking, but
 6   oftentimes we miss payments, and we have to go
 7   back through and test memories and emails, so it's
 8   not perfect by far.
 9              MS. LIGHT:  I just don't remember if
10         we have discussed it already.
11              So I don't know, Steven, if you want
12         to go have her read back or if you remember
13         the question, but I was --
14         Q.    I'm going to ask you, are you
15   currently representing David Cohan in any matters?
16         A.    I don't know.
17         Q.    I'd like to go through several cases
18   at this point that we found that your law firm
19   represents David Cohn, C-O-H-N, David Cohan,
20   C-O-H-A-N, or David Cohen, C-O-H-E-N.
21              MS. LIGHT:  I'm going -- if you could
22         open the file that --
23              MR. BIOLSI:  I'm not telling you how
24         to do the deposition, but do you want to
25         like maybe even explore Exhibit N first so I
```

38

```
 1                    D. Bowman
 2       can -- I'm having trouble.  The luxury that
 3       the two of you have that I don't have is
 4       that I'm not sure who we're talking about,
 5       and I think maybe I'm hoping that Exhibit N
 6       might make things move a little bit more
 7       efficiently, because we have Mr. Bowman
 8       saying that he doesn't remember certain
 9       things.  Not only will it help me, but it
10       will help him remember.
11            MS. LIGHT:  You want me to start with
12       Exhibit M and go through his subpoena
13       responses?
14            MR. BIOLSI:  N.
15            MS. LIGHT:  N, as in Nancy.
16            MR. BIOLSI:  Yeah.  See if that helps.
17       I'm not sure who --
18            MS. LIGHT:  I don't know if that's
19       going to help, but you want me to go through
20       my questions for Exhibit N at this point?
21       It's just pictures.
22            MR. BIOLSI:  Are you mentioning for
23       example, Cohn, Cohan and Cohen?  And I don't
24       know if this would help the witness be able
25       to identify who you're talking about.
```

39

1                    D. Bowman

2          MR. BOWMAN:  If anyone is asking my

3     two cents, I think that's the more

4     expeditious way to go, and I think will give

5     you good clarity, as well, Ms. Light.

6          MS. LIGHT:  So, fine.  I'm going to do

7     what they're saying, and I'm going to --

8     Maureen, Exhibit N -- if we could go through

9     Exhibit N, I'd like to have it marked as

10    Exhibit N, so that it doesn't throw me out

11    of whack should we go back, so on the

12    transcript, it will look out of place, but

13    it will just make my life a lot easier and

14    everyone else when we have to go through, if

15    we have to go through the other exhibits.

16         MR. BIOLSI:  I agree.  We don't have

17    to redo the letter.  I like the way you

18    lettered it.  I was just hoping --

19         MS. LIGHT:  So then we'll start with

20    Exhibit N, so I'm going -- if we all open

21    Exhibit N, which is labeled DMV records, and

22    I'd like to have it marked as Exhibit N for

23    the record, Creditor Exhibit N.

24         (Creditor Exhibit N, DMV Records,

25    marked for identification.)

40

1                          D. Bowman

2        Q.    I'd like you to take a look at these

3   pictures.  I redacted the information on it

4   myself, because I wanted you to take a look, and

5   if you could tell me based on these pictures who

6   -- what the name is of the person that you see

7   here.

8        A.    I don't know what the name on the

9   document is, because it's been redacted, but that

10  is an individual that I know as Eli Cohen,

11  C-O-H-E-N.

12            MR. BIOLSI:  E-L-I?

13            THE WITNESS:  That's correct.

14       Q.    Eli Cohen?

15       A.    Yes.

16            The only picture I am unclear about is

17  the second picture, but all the other pictures are

18  Eli Cohen.

19       Q.    All right.  Do you happen to know the

20  date of birth for Eli Cohen, by any chance?

21       A.    I don't.

22       Q.    Do you know his address?

23       A.    No.

24       Q.    Did you ever represent -- you know

25  what?  Sorry.  Strike that, please.

41

1                          D. Bowman

2               I'd like to show you what has -- I

3    would like marked, please, as Exhibit I.

4               (Creditor Exhibit I, Retainer

5          Agreement, marked for identification.)

6          Q.    I'm just fishing around one second,

7    please.

8               Have you seen this retainer agreement

9    before?

10         A.    I saw it in preparation for today's

11   deposition, and although I have no recollection of

12   it, I'm sure I have seen it before that, as well.

13         Q.    And did you meet Eli Cohen in person?

14         A.    Yes.

15         Q.    How many times would you say that

16   you've met him?

17         A.    I don't know.  More than 50.

18         Q.    More than 50?

19         A.    I would say so.

20         Q.    On what occasions did you meet him?

21         A.    Only professionally to discuss certain

22   cases.

23         Q.    Did you meet him in places other than

24   your office?

25         A.    No.

42

1                     D. Bowman

2          Q.     Have you ever met a spouse of Eli

3     Cohen?

4          A.     Not to my recollection.

5          Q.     Have you met any children of Eli

6     Cohen?

7          A.     No.

8          Q.     Have you ever met any business partner

9     of Eli Cohen, business partners?

10               (Discussion off the record.)

11         Q.     Did you ever meet a business partner

12    of Eli Cohen?

13         A.     Not that I recall.

14         Q.     And did you ever get a phone number

15    for -- disregard that.  Sorry.  Don't answer that

16    question, because I have the answer.  It was in

17    your subpoena response.

18               Did you ever get an address for Eli

19    Cohen?

20         A.     No.

21         Q.     Where he lives?

22         A.     Not to my recollection.

23         Q.     I'm going to show you --

24               MS. LIGHT:  If you could open Exhibit

25         J, please.

43

1                          D. Bowman

2                  (Creditor Exhibit J, Invoices, marked

3          for identification.)

4          Q.    Which are invoices that you submitted

5    to me.  These are part of your subpoena responses,

6    so it has the Bates stamps on the bottom right.

7                  This is what gives it away that was a

8    MyCase, because I used MyCase as well, so I'm

9    familiar with these invoices.

10                 Are these the only invoices generated

11   for Eli Cohen?

12         A.    Those are the only invoices generated

13   for Eli Cohen that I could locate in response to

14   your subpoena.

15         Q.    And do you know whether these invoices

16   were paid?

17         A.    I don't know.

18         Q.    Do you know whether somebody else ever

19   made payments on behalf of Eli Cohen?

20         A.    I don't recall.

21         Q.    If payments were made.

22                 MR. BIOLSI:  Are you answering his

23         question?

24                 MS. LIGHT:  No, no.  I was completing

25         my question.  If payments were made, were

44

1                      D. Bowman

2          they ever made by somebody else other than

3          Eli Cohen, but on his behalf.  That makes

4          sense, but he answered the question.  That's

5          fine.  Okay.

6          Q.    So I'd like to go back now to what I

7     have labeled as Exhibit B, as in boy.  If you can

8     just open that and let me know when you have it

9     opened.

10         A.    It's open.

11         Q.    Have you ever seen this affirmation in

12    opposition before?

13         A.    Yes.

14              MS. LIGHT:  I'd like to have this

15         marked as Creditor's Exhibit B, please.

16              (Creditor Exhibit B, Affirmation in

17         Opposition, marked for identification.)

18         Q.    Can you tell me who you represent in

19    this case?

20         A.    When you say you --

21              MR. BIOLSI:  Referring to --

22         Q.    The firm, sorry, the law firm.

23         A.    Defendants David Cohan, C-O-H-A-N, and

24    LTE Development Inc.

25         Q.    Have you ever met anybody related to

45

1                        D. Bowman

2   LTE Development Inc.?

3         A.    I don't know.

4         MS. LIGHT:  If you could open the

5         document labeled Exhibit C, and I'd like to

6         have this marked as Creditor Exhibit C,

7         please.

8         (Creditor Exhibit C, Affirmation in

9         Further Support of Defendant's Motion for

10        Summary Judgment and In Opposition to

11        Plaintiff's Motion to Dismiss, marked for

12        identification.)

13        Q.    Have you ever seen this document

14   before?

15        A.    Yes.

16        Q.    Can you tell me what it is?

17        A.    It's an Affirmation in Further Support

18   of Defendants' Motion For Summary Judgment and in

19   opposition to Plaintiff's Motion to Dismiss,

20   related to --

21        Q.    Go ahead.

22        A.    -- related to case Cohan, C-O-H-A-N,

23   versus Federal National Mortgage Association

24   identified under Index No. 505450 of 2018.

25        Q.    And can you tell me who the Anderson

46

1                          D. Bowman

2      Bowman & Zalewski represented in this case?

3           A.    Plaintiff David Cohan, C-O-H-A-N.

4           Q.    Was Anderson Bowman & Zalewski PLLC

5      still operating in 2018?

6           A.    There was, yes.  SBAGK opened on or

7      about June or August of 2018.  Anderson Bowman

8      Zalewski didn't close for a year as we were

9      wrapping up affairs.

10          Q.    If you could open what's labeled as

11     Exhibit D, please.  Let me know when you have it

12     opened.

13          A.    Open.

14          Q.    And can you tell me what this document

15     is?

16          A.    It's an affirmation in opposition to

17     defendants' order to show cause in the case David

18     Cohn, C-O-H-N, versus various defendants

19     identified under 505470 of 2018.

20               MS. LIGHT:  And I'd to have this

21          marked, please, as Exhibit D.

22               (Creditor Exhibit D, Affirmation in

23          Opposition to Defendant's Order to Show

24          Cause, marked for identification.)

25          Q.    And can you tell me who Anderson

47

1                         D. Bowman

2    Bowman & Zalewski PLLC represented in this case?

3          A.    David Cohn, C-O-H-N.

4          Q.    Did you ever meet David Cohn, C-O-H-N?

5          A.    Not that I remember.

6          Q.    Does your law office keep records of

7    in-person meetings?

8          A.    No.

9          Q.    So would you know whether Matthew

10   Routh met with David Cohn, C-O-H-N?

11         A.    I don't know.  Maybe.

12         Q.    Can you please open -- I think we just

13   did D; is that correct?

14              MS. LIGHT:  So can we please open D 1.

15              (Creditor Exhibit D 1, Affidavit in

16         Support, marked for identification.)

17         Q.    And can you tell he what this document

18   is?

19         A.    An affidavit in support of something

20   related to a case Cohan, C-O-H-A-N, versus Federal

21   National Mortgage Association 505450/2018.

22         Q.    Can you please tell me who is the

23   affiant on this affidavit?

24         A.    David Cohan, C-O-H-A-N.

25         Q.    Turn to the last page of this

48

1                          D. Bowman

2      affidavit, please.

3          A.    Yes.

4          Q.    And tell me, do you know what the name

5      of the notary public is that executed this

6      affidavit?

7                MR. BIOLSI:  What do you mean, do you

8          know what it is?

9                MS. LIGHT:  Sorry, sorry, sorry.  Let

10         me rephrase the question.

11         Q.    Do you know the name of the notary

12     public that executed this affidavit?

13               MR. BIOLSI:  Meaning does he know the

14         person or can he read it?

15         Q.    Can you read the name?

16         A.    Yes, Jaakov Winkler, J-A-A-K-O-V,

17     Winkler, normal spelling.

18         Q.    Have you ever meet Jaakov Winkler?

19         A.    No.

20         Q.    Have you ever spoken with Jaakov

21     Winkler?

22         A.    No.

23         Q.    Are you aware that Jaakov Winkler has

24     filed a report with the Kings County sheriff that

25     his notary stamp was stolen?

49

1                         D. Bowman

2          A.     No.

3          Q.     Do you know whether David Cohan,

4     C-O-H-A-N, met with Jaakov Winkler?

5          A.     I don't know.

6               MR. BIOLSI:  Do you have a foundation

7          for that question or were you guessing as to

8          the status of --

9               MS. LIGHT:  I don't know if Jaakov --

10         if he knows Jaakov Winkler.  I don't know.

11         Like, a lot of law firms have people that

12         notarize documents on their office.

13              MR. BIOLSI:  I mean, did you have a

14         good faith basis for the question that they

15         went to the sheriff, or were you just asking

16         him to give you that?

17              Do you have independent evidence that

18         that event occurred?

19              MS. LIGHT:  Yes.

20              MR. BIOLSI:  Okay.

21              MS. LIGHT:  I've spoken with the

22         sheriff.  I can give you his name, if you

23         want it, but I don't want to put it in the

24         record.  I've spoken with Yaakov himself,

25         and the sheriff.

1                      D. Bowman

2        Q.    I'd like to show you -- if you could

3    please open Exhibit E or what I have labeled as

4    Exhibit E.

5              MS. LIGHT:  And if we could please

6        mark this as Exhibit E, Creditor's Exhibit

7        E.

8              (Creditor Exhibit E, Notice of Appeal,

9        marked for identification.)

10       Q.    Have you seen this document before?

11       A.    Yes.

12       Q.    Can you tell me who Anderson Bowman &

13   Zalewski PLLC represented in this case?

14       A.    I don't know from my independent

15   recollection, but in reviewing the document, we --

16   Anderson Bowman Zalewski represented Cohan,

17   C-O-H-A-N.

18       Q.    Any chance that you know the outcome

19   of this appeal?

20       A.    I assume we won.  I don't know.  I

21   really don't know.

22       Q.    So that was Exhibit E.

23             If you could please open what I have

24   labeled as Exhibit F.

25             (Creditor Exhibit F, Notice of Entry,

51

1                           D. Bowman

2          marked for identification.)

3          Q.    If you could tell me what that

4     document is, please.

5          A.    The notice of entry before a certain

6     case identified as 513279 of 2013.

7          Q.    Can you tell me who Anderson Bowman &

8     Zalewski PLLC represented in this case?

9          A.    I don't know.

10         Q.    I'm just looking at different places,

11    because I have multiple screens, I'm not just

12    looking around.

13                If you could please open exhibit --

14    what I labeled as Exhibit G, please.

15                (Creditor Exhibit G, Judgment, marked

16         for identification.)

17         Q.    And can you tell me what this document

18    is, please?

19         A.    It is a judgment related to Index No.

20    160840/2017.

21         Q.    Are you familiar with this case?

22         A.    Yes.

23         Q.    Who do you represent in this case?

24         A.    C-O-H-N, David.

25         Q.    Have you seen this judgment before?

52

1                    D. Bowman

2        A.    Yes.

3        Q.    Do you know whether -- sorry, let's

4    scroll down to the last page.  I think it's in the

5    last page.  Yes.  And it's Paragraph 6.

6             Can you please read that into the

7    record?

8             MR. BIOLSI:  Wait, no.  I don't like

9        him to read it into the record.  It speaks

10       for itself, though.

11            MS. LIGHT:  It speaks for itself.

12       Q.    So therefore, can you just confirm

13   that in this case the judge made a determination

14   that plaintiff's name is David Cohan, C-O-H-A-N,

15   rather than C-O-H-N?

16       A.    From the face of the document, the

17   judge did amend the caption to reflect that.

18       Q.    Do you know whether your office made

19   an application to have the name changed,

20   corrected?

21       A.    I don't know.

22       Q.    Do you remember attending a hearing in

23   a case called Federal National Mortgage

24   Association versus Alberto Morales on December 1,

25   2017?

53

1                    D. Bowman

2        A.    No.

3        Q.    I'm going to show you -- if you can

4    please open Exhibit G 1.

5             MS. LIGHT:  And I'd like to have this

6        marked as G 1, please.

7             (Creditor Exhibit G 1, Transcript,

8        marked for identification.)

9        Q.    If you can scroll to Page 6 of the

10   PDF.

11       A.    Yes.

12       Q.    I don't know if -- sorry.  I don't

13   know if you want to go back to Page 2 just to see

14   that this is a transcript of a hearing that you

15   attended.  If you see on the top there, it says

16   like -- it was a caption, and then it says, "60

17   Centre Street, New York, New York, December 1,

18   2017."

19            So that's what I was asking about, if

20   you recalled attending this hearing, and the

21   appearances say that you, Dustin Bowman, were --

22   you attended this hearing on December 1.

23            Do you have any recollection of

24   attending the hearing?

25       A.    No.

54

1                       D. Bowman

2         Q.    So now if you scroll down to Page 6 of

3    the PDF, which is Page 5 of the -- of the

4    transcript, Line 21.

5               Starting on Line 21, you say that, "I

6    have Mr. Cohan, C-O-H-A-N, in the hallway ready to

7    proceed on that issue, as well, as there is a

8    traverse hearing on both the service of Mr.

9    Morales and Mr. Cohan."

10              Do you recall having Mr. Cohan in the

11   hallway?

12        A.    No.

13              I don't recall the hearing at all.

14   I've gone to 50 or more hearings since that time.

15   I don't know.

16        Q.    This is kind of like a hard question,

17   but I'm going to ask it.

18              When you -- when you looked at those

19   DMV pictures, do you want to open those back up,

20   Exhibit N?

21        A.    Okay.

22        Q.    Do you recall whether that person came

23   to attend the hearing with you on December 1,

24   2017?

25              MR. BIOLSI:  Look at all six.  I don't

55

                              D. Bowman

1

2        honestly don't know if all six people are

3        the same or -- I don't know if we

4        established that.

5              MS. LIGHT:  I don't know how --

6        A.    I previously testified that the only

7   picture that didn't look like Eli Cohen was the

8   second picture.

9              As far as my recollection of the

10  hearing, I have no recollection of the hearing

11  whatsoever.

12             Could we go off the record for just a

13  second?

14             MS. LIGHT:  Sure.

15             (Discussion off the record.)

16       Q.    I'd like to present or if you could

17  please open -- sorry about that -- Exhibit H, and

18  if we can have it marked as Exhibit H.

19             (Creditor Exhibit H, Affidavit in

20       Support, marked for identification.)

21       Q.    And can you tell me what this document

22  is?

23       A.    It's an affidavit in support of a -- I

24  don't know what, and in relation to Index No.

25  10528 of 2015.

56

1                      D. Bowman

2       Q.    Who is the affiant on this affidavit?

3       A.    David Cohan, C-O-H-A-N.

4       Q.    Do you have any recollection of your

5   law firm representing M&Q Estates in this matter?

6       A.    Do I have a recollection of it.  I

7   really don't.  I mean, it's clear we did, but I

8   don't have a recollection of it.

9       Q.    Do you know if Eli Cohen is related to

10  David Cohan?  I'm going to say C-O-H-E-N.

11            Let me clarify.  C-O-H-E-N is

12  related -- my question is, is Eli Cohen,

13  C-O-H-E-N, related to David Cohan, C-O-H-A-N?

14      A.     I -- I don't know.  If you are talking

15  about family relation, I don't know.

16            MR. BIOLSI:  What you are looking at,

17       a document?

18            THE WITNESS:  I'm just staring off

19       into space, more or less, but back to my

20       answer, I don't know if they're related in a

21       family kind of a sense.  Are you asking how

22       they're related?

23      Q.    I'll ask you.  Do you know if they're

24  related professionally?

25      A.    Again, I don't know David C-O-H-E-N

57

1                    D. Bowman

2    or, you know, is related to Eli Cohen, the guy

3    that I know, but in all of these cases that you're

4    referring to, Eli was the point of contact, right?

5    So I would produce or my office would produce

6    documents.  We would deliver it to Eli one way or

7    another, and then they could come back executed by

8    the correct party.

9              (Discussion off the record.)

10        Q.    Did Eli Cohen ever tell you where

11   David Cohan, C-O-H-A-N, lived?

12              MR. BIOLSI:  That would be privileged,

13        I think.  The client is Eli.  I would like

14        to -- I don't think I want him to answer

15        that question.

16        Q.    Did you ever find out where David

17   Cohan lived?

18        A.    I don't know.  I may -- I don't have

19   any recollection if I ever knew where he lived or

20   the information was ever given to me.

21        Q.    Did Eli Cohen, C-O-H-E-N, ever tell

22   you why -- yeah, okay, let me take that back.

23              Did you ever try to meet with David

24   Cohen, C-O-H-A-N?

25        A.    I don't remember.

58

1                         D. Bowman

2        Q.    Whenever you needed to speak with

3   David --- if you needed to speak to David Cohan,

4   would you have contacted Eli Cohen, C-O-H-E-N?

5        A.    I don't know.

6        Q.    Did Eli Cohen, C-O-H-E-N, ever ask you

7   -- sorry, let me take that back.

8              Did you come to represent David Cohn

9   through an introduction from Eli?

10             MR. BIOLSI:  C-O-H-N?

11             MS. LIGHT:  C-O-H-N.

12       A.    I don't know.

13       Q.    Eli Cohen, C-O-H-E-N?

14       A.    I don't know.  I don't know.

15       Q.    Did Eli Cohen, C-O-H-E-N, introduce

16   you to any other clients?

17       A.    I don't know.

18       Q.    So you only came to know of David

19   Cohan, C-O-H-A-N through Eli Cohen, C-O-H-E-N?

20       A.    Yes.

21       Q.    Did you receive payment for your bills

22   from David Cohan, C-O-H-A-N?

23       A.    I don't know, but I assume we did, but

24   I don't know.

25       Q.    Did you ever receive like an ID, some

1                      D. Bowman

2    sort of identification, for David Cohan,

3    C-O-H-A-N?

4         A.    I don't know.

5         Q.    We are going to switch gears for a

6    minute, and I'm going to ask you, have you ever

7    represented someone by the name of Rami, R-A-M-I,

8    second name L-A-O-R?

9         A.    I think so.

10        Q.    If you could open exhibit -- what I

11   have labeled as Exhibit K, and if I can have this

12   please marked as Exhibit K.

13             (Creditor Exhibit K, Answer with

14             Counterclaims, marked for identification.)

15        Q.    This is an answer filed by the law

16   offices of Abraham Hoschander.

17             Have you ever met Rami Laor in person?

18        A.    I really don't know.

19        Q.    Do you know if he's professionally

20   related to Eli Cohen, C-O-H-E-N?

21        A.    I don't know.

22        Q.    I'd like to show you what has been

23   marked as Exhibit L and I'd like to have it marked

24   please as Exhibit L.

25             (Creditor Exhibit L, Affidavit of

60

1                          D. Bowman

2          Service by Mail, marked for identification.)

3          Q.    Are you familiar with the address 320

4    Barr Avenue in Woodmere, New York, 11598?

5          A.    No.

6          Q.    Have you ever see this address for

7    David Cohan, C-O-H-A-N?

8          A.    No, I've never seen the address for

9    him or in any other way, to the best of my

10   recollection.

11         Q.    Have you ever represented somebody

12   named Eli, E-L-I, Maor, M-A-O-R?

13         A.    No.

14         Q.    Have you ever represented somebody

15   named Samuel Cohen, S-A-M-U-E-L, C-O-H-E-N?

16         A.    No.

17              MR. BIOLSI:  For the past twenty

18         years?

19              THE WITNESS:  I was about to say, as

20         far as I can remember.

21         Q.    Do you know if there is -- if you

22   would have met somebody named Samuel Cohen, either

23   by telephone or in person through Eli Cohen,

24   C-O-H-E-N?

25         A.    I don't recall if I ever met him, so I

61

1                          D. Bowman

2   wouldn't recall the specifics how I met someone.

3        Q.    Okay, that's fine.

4             Do you know if Eli Cohan has a Social

5   Security number?

6        A.    I really don't know.

7        Q.    Would you have ever obtained a copy of

8   the Social Security card or a Social Security

9   number?

10        A.    I don't know, but I believe that I did

11   a thorough search of the statements in response to

12   your subpoena, which I -- I don't think so.

13        Q.    Have you handled any transactional

14   work for Eli Cohen, C-O-H-E-N?

15        A.    Not as far as I can remember.

16        Q.    Have you handled any transactional

17   work for David Cohan, C-O-H-A-N?

18             MR. BIOLSI:  Are you referring to the

19        film or him specifically?

20             MS. LIGHT:  Him specifically as a

21        partner of the law firm.

22        A.    I don't remember.

23        Q.    Do you know if anybody in your law

24   firm has handled transactional work for David

25   Cohen, C-O-H-A-N?

62

1                         D. Bowman

2        A.    No, I don't know, but I'm also in

3   charge of that department, so I would have seen

4   it.

5        Q.    Have you ever filed for bankruptcy or

6   your office on behalf of Eli Cohen, C-O-H-E-N?

7        A.    We -- I don't know, but we don't file

8   bankruptcies.

9        Q.    I was just asking about bankruptcy.

10              What about David Cohan, C-O-H-A-N?

11              Did your office file bankruptcy

12  filings for him?

13       A.    I don't believe so.

14       Q.    And I'm going to go through the other

15  variations.  David Cohn, C-O-H-N, has your office

16  filed for bankruptcy on his behalf?

17       A.    No, as far as I can remember.

18       Q.    Do you know a woman named Sharon,

19  S-H-A-R-O-N, last name A-V-I-T-S-E-D-E-K?

20       A.    I don't think so.

21              MR. BIOLSI:  You using something to

22         refresh your recollection?

23              THE WITNESS:  I was going to, but I

24         think that's the first time I was asked that

25         question that was -- that was kind of to see

63

1                    D. Bowman

2        if I can locate the name.

3              MS. LIGHT:  It's fine with me, if it's

4        okay with your attorney.

5              MR. BIOLSI:  Are you Googling it?

6              THE WITNESS:  No, looking through my G

7        drive.  How do you spell the last name?

8              MS. LIGHT:  A-V-I-T-S-E-D-E-K.

9        Q.    I'm going to ask you the variations of

10   her name as well.  Just heads up.

11       A.    No.

12       Q.    Do you know somebody named Sharon,

13   same spelling, S-H-A-R-O-N, last name, Y-A-N-A-Y?

14       A.    No.

15       Q.    What about somebody named Y-A-N-A-Y,

16   last name, S-H-A-R-A-N?

17       A.    Can I have the question read back,

18   please?

19       Q.    Do you know a woman by the name of

20   Yanay, Y-A-N-A-Y, last name, S-H-A-R-A-N?

21       A.    Yes.

22       Q.    How do you know her?

23       A.    I believe we represented her in a

24   landlord tenant proceeding.

25       Q.    Do you know how you met her?

```
 1                    D. Bowman

 2        A.    I don't know.

 3        Q.    Was she brought to you by Eli Cohen,

 4   C-O-H-E-N?

 5        A.    I don't know.

 6        Q.    Did you ever meet with her in person?

 7        A.    No, not that I recall.

 8        Q.    Do you have an address for her?

 9        A.    No.  I mean, I don't know.  I mean,

10   I -- I don't have an address offhand.

11        Q.    Do you have a phone number for her?

12        A.    I don't know.

13        Q.    Is your answer --

14        A.    I don't know, and then I'm going to

15   explain you can leave a blank in the record.  I'm

16   happy to fill in the information if I can locate

17   it.

18   INSERT:  _____

19   _____

20        Q.    Thank you.

21               Do you know if Yanay Sharon is

22   married?

23        A.    I don't know.

24        Q.    Do you know if she has children?

25        A.    I don't know.
```

65

1                    D. Bowman

2         Q.    Do you know what country she's from?

3         A.    I don't know.

4         Q.    Do you know a person by the name

5    Yarona, Y-A-R-O-N-A, last name Yanay, Y-A-N-A-Y?

6         A.    No.

7         Q.    Do you know a person by the name of

8    Yanay, Y-A-N-A-Y, last name Yarona Y-A-R-O-N-A?

9         A.    No, not that I recall.

10        Q.    Do you keep notes as to how clients

11   come to you?

12        A.    Only if --

13        Q.    Your law firm, sorry.  Let me

14   rephrase.

15        A.    Only if it's referred by an attorney.

16        Q.    Do you know if your office

17   corresponded with Yanay Sharon via email?

18        A.    I don't know.

19        Q.    Do you know whether anybody in your

20   office met with her in person?

21        A.    I don't know.

22        Q.    Did you ever require an affidavit from

23   Yanay Sharon in any case?

24        A.    I don't know.

25        Q.    Do you know whether she paid any of

66

1                    D. Bowman

2    your invoices?

3              MR. BIOLSI:  Do you know if there's

4         been invoices?

5         Q.    Do you know if there have been any

6    invoices to Yanay Sharon?

7         A.    I don't know.

8         Q.    Is there a way you can check?

9         A.    Yeah.  So looking through, we don't

10   retain -- we don't retain records for more than

11   six years.  It's not clear to me when this case

12   concluded, but it looks like 2018 up on the

13   conclusion of the case we scan an entire file into

14   the record which happens more since the

15   transfer -- since the opening of SBAGK, and

16   looking through the file as we speak, even though

17   I probably shouldn't be, I do not see any invoices

18   issued or proofs of payment in the file.

19        Q.    So does that mean --

20        A.    I'm sure I was paid, absolutely sure.

21   Otherwise, I wouldn't have taken the case.

22        Q.    Would you have asked for payment up

23   front in a case like this?

24        A.    On a housing case I would typically

25   charge a flat fee up front, which would cover the

1                         D. Bowman

2    case from start to finish.

3                    MS. LIGHT:  I don't know if I asked

4          this, so Steven, maybe you'll remember if I

5          asked.  What -- let me ask something else.

6          Q.    What property address did you

7    represent her on?

8          A.    I don't know.

9          Q.    Do you know her to be a woman?

10         A.    I don't.

11         Q.    I'm just assuming that she's a woman.

12   I mean, you know, I -- you know.

13                    And this is what I wasn't sure if I

14   asked before.

15                    Did I ask you whether or not you

16   received an affidavit from her?  I don't know if I

17   did, so I'm going to ask you again, and if Steven

18   wants to object, we will go back in the record.

19                    Did you receive an affidavit from

20   Yanay Sharon?

21         A.    Not that I can recall.

22         Q.    Do you have a copy of an affidavit in

23   your file from Yanay Sharon?

24                    MR. BIOLSI:  One he doesn't recall

25         having.

```
 1                      D. Bowman
 2            MS. LIGHT:  Well, I'm just asking if
 3       he can check his file basically.  Like would
 4       it be there?  Would that be possible?
 5            MR. BIOLSI:  Just for the record, it
 6       looks likes he's scrolling.  One of my
 7       concerns is there's so many variations of
 8       the name, that who even knows what he's
 9       looking at would be proper spelling of
10       whatever.
11  RQ        MS. LIGHT:  So Steven, even if we can
12       just -- if I could just request that he, you
13       know, take a look at his file and, you know,
14       not now, meaning like after the deposition,
15       if he can find something responsive to this
16       question, whether or not she ever executed
17       an affidavit for them and whether or not
18       like payments were made by her.
19            MR. BIOLSI:  She executed an affidavit
20       for Dustin's firm.
21            MS. LIGHT:  Yes.
22            THE WITNESS:  So Danielle, who was
23       your individual client on this case?  Is it
24       Yonel Devico?
25            MS. LIGHT:  No, he's the asset
```

69

```
 1                    D. Bowman
 2       manager.  He's not the client.
 3            THE WITNESS:  So it looks like I took
 4       over the case we're discussing from Petroff
 5       Amshen, P-E-T-R-O-F-F A-M-S-H-E-N, and I
 6       never had an affidavit from -- what's her
 7       name, Sharon?
 8            MS. LIGHT:  Sharon.
 9            THE WITNESS:  Sharon.  We just settled
10       the case without an affidavit required.
11       Q.    Can I ask you what -- why you
12    mentioned the name Yanel Devico?
13       A.    Because ironically his name is on this
14    file.
15       Q.    Is it -- is this because the property
16    address -- is the property address St. John's
17    something -- St. John Street?
18       A.    956 St. John's Place.
19       Q.    Right, right.  That's a case that I'm
20    handling.  That is why -- for a different
21    investor.  We are just about finished.
22            I would like you to please open up
23    what's labeled as Exhibit M as in Mary, and as we
24    wrap up, just in looking at your subpoena
25    responses, do you know why or do you know whether
```

70

1                          D. Bowman

2   you have a retainer somewhere with David Cohn,

3   C-O-H-N?

4        A.    Whatever as I swore to and affirmation

5   and affidavit, I personally conducted the

6   searches.  I searched our D drive as well as

7   physical files at the office personally, and I

8   only located the retainer agreements and checks

9   that I delivered to your office in response to the

10  subpoena.

11               (Creditor Exhibit M, Subpoena

12          Requested Documents, marked for

13          identification.)

14       Q.    Do you know whether Eli Cohen has a

15  middle initial?

16       A.    I don't know.

17       Q.    Are you familiar with aliases of Eli

18  Cohen, C-O-H-E-N?

19       A.    I only understand the allegations that

20  you're making.  I don't understand him to have any

21  aliases at all.

22       Q.    If you look at Request No. 66 on the

23  subpoena, your office listed your response, the

24  response.  Lists a phone number of 718-809-5088

25  for Eli Cohan.

71

1                     D. Bowman

2               Have you ever dialed 718-809-5088?

3       A.    As I sit here, I don't know.

4       Q.    Have you ever made a phone call to Eli

5    Cohen, C-O-H-E-N?

6       A.    Yes.

7       Q.    Have you ever -- have you ever dialed

8    that 718 number?  Do you want me to repeat it

9    every single time?

10              (Discussion off the record.)

11      Q.    When I refer to the 718 number, it's

12   the specific number.

13              So have you ever dialed the 718 number

14   and spoken with David Cohen, C-O-H-E-N?

15      A.    I've never spoken with David

16   C-O-H-E-N.  Is that what you said?

17      Q.    Yes.

18              And same question for David Cohan,

19   C-O-H-A-N.  Did you ever dial this 718 number to

20   speak with David Cohan, C-O-H-A-N?

21      A.    As far as I can remember, I've never

22   spoken to that person.

23      Q.    What about dialing that number to

24   speak with Rami Laor, L-A-O-R?

25      A.    As far as I can remember, I never

72

1                          D. Bowman

2    called that person.

3         Q.    And have you ever dialed that number

4    and spoken with Ilan David Avistedek?

5         A.    As far as I can recall, no.

6         Q.    Have you ever spoken with anybody that

7    I did not mention that has the phone number

8    718-809-5088?

9         A.    Eli Cohen.

10         Q.    So whenever you dialed that number,

11    you've spoken with Eli Cohen, C-O-H-E-N.

12         A.    When he picks up, yes.

13         Q.    Does your office have caller ID?  I

14    know these sound ridiculous, but I'm going

15    somewhere so you just got to work with me.

16         A.    My -- when someone calls my office and

17    my office line, typically a number will be here

18    from the incoming caller.  Is that the question?

19         Q.    Is there a name that ever shows up?

20         A.    I don't recall.

21         Q.    On January 5, 2022, I received a phone

22    call from 718-809-5088.  Do you know anything

23    about that phone call?

24         A.    I have no idea.

25         Q.    Did you ever instruct anybody to call

73

1                          D. Bowman

2    my office from that phone number?

3              MR. BIOLSI:  You are asking him did he

4         give somebody advice to do so something?

5              MS. LIGHT:  Okay.

6         Q.    Are you aware that somebody contacted

7    my office on January 5, 2022, from 718-809-5088?

8         A.    I am not aware.

9         Q.    Do you know anybody named Ilan Avi,

10   A-V-I?

11        A.    No.

12        Q.    Do you know an attorney by the name

13   Steven Amshen, A-M-S-H-E-N?

14        A.    I know him.  I don't consider him a

15   friend, but a colleague.

16        Q.    Do you have any joint clients with

17   him?

18             MR. BIOLSI:  What is a joint client?

19        Q.    Do you represent some of the same

20   people as their attorneys?

21             MR. BIOLSI:  I'm not sure what you

22        mean.

23        Q.    Do you know whether Steven Amshen

24   represents David Cohen, C-O-H-A-N?

25        A.    I don't know.

74

1                    D. Bowman

2        Q.    Have you ever spoken with Steven

3   Amshen about David Cohan, C-O-H-A-N?

4        A.    Yes.

5        Q.    Can you tell me what the sum and

6   substance was of that conversation?

7        A.    It was in relation to this litigation.

8   I don't remember exactly what was said, but in

9   sum, that this was torturing me, and that he

10  should do something about it.  Whatever it was,

11  give you what you want, or settle the case.  I

12  just didn't want to be deposed, and yet here I am.

13            MS. LIGHT:  I think that's it for me.

14        I'll end up on that note.  I don't know if,

15        Steven, if you have anything you want to

16        add.

17            MR. BIOLSI:  No, I'm good.

18            MS. LIGHT:  That is it for us.

19            I'd like to just request a copy of the

20        transcript when it can be available.  I

21        don't need it as a rush at all.

22            (Time noted:  2:52 p.m.)

23

24

25

75

```
 1
 2                A C K N O W L E D G M E N T
 3
 4
     STATE OF NEW YORK      )
 5                          :ss
     COUNTY OF  Queens      )
 6
 7
 8
 9        I, DUSTIN BOWMAN, hereby certify that
10    I have read the transcript of my testimony taken
11    under oath in my deposition of May 2, 2022, that
12    the transcript is a true, complete and correct
13    record of my testimony, and that the answers on
14    the record as given by me are true and correct.
15
16
17        _____
18                        DUSTIN BOWMAN
19    Signed and subscribed to before me,
20    this  10th day of  March          , 2023.
21
22    _____
                                        Milana Rubinova
                                  Notary Public, State of New York
                             No.01RU6189464, Qualified in Queens County
                               Commission Expires June 23, 20 24
23    NOTARY PUBLIC
24
25
```

76

1

2                           I N D E X

3

4    WITNESS              EXAMINATION BY          PAGE

5    Mr. Bowman        Ms. Light                    5

6

7                    INFORMATION REQUESTS

8    INSERT:  64

9    RQ:  68

10                    E X H I B I T S

11   CREDITOR EXHIBIT                             PAGE

12     A    Retainer Agreement                    28

13     A 1  Check No. 1951                        35

14     N    DMV Records                           39

15     I    Retainer Agreement                    41

16     J    Invoices                              43

17     B    Affirmation in Opposition             44

18     C    Affirmation in Further Support of     45

19          Defendant's Motion for Summary

20          Judgment and In Opposition to

21          Plaintiff's Motion to Dismiss

22     D    Affirmation in Opposition to          46

23          Defendant's Order to Show Cause

24     D 1  Affidavit in Support                  47

25     E    Notice of Appeal                      50

1                 E X H I B I T S (cont'd)

2     F    Notice of Entry                     50

3     G    Judgment                            51

4     G 1  Transcript                          53

5     H    Affidavit in Support                55

6     K    Answer with Counterclaims           59

7     L    Affidavit of Service by Mail        59

8     M    Subpoena Requested Documents        70

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

78

1

2                C E R T I F I C A T I O N

3

4        I, MAUREEN McCORMICK, a Notary Public within

5    and for the State of New York, do hereby certify:

6        That the testimony in the within proceeding

7    was held before me at the aforesaid time and

8    place.

9        That said witness was duly sworn before the

10   commencement of the testimony, and that the

11   testimony was taken stenographically by me, then

12   transcribed under my supervision, and that the

13   within transcript is a true record of the

14   testimony of said witness.

15       I further certify that I am not related to

16   any of the parties to this action by blood or

17   marriage, that I am not interested directly or

18   indirectly in the matter in controversy, nor am I

19   in the employ of any of the counsel.

20       IN WITNESS WHEREOF, I have hereunto set my

21   hand this 26th day of May, 2022.

22

23       _____

24              MAUREEN McCORMICK

25

**A**

**A-M-S-H-E-N** 69:5 73:13
**A-V-I** 73:10
**A-V-I-T-S-E-D-E-K** 62:19 63:8
**A&Q** 26:3,5
**ability** 7:3
**able** 6:19 38:24
**Abraham** 59:16
**absolutely** 66:20
**accept** 10:14
**account** 35:13,14
**accurate** 20:7,14
**action** 7:17 25:2 78:16
**activity** 24:25
**add** 74:16
**additional** 27:22
**address** 5:23 32:18,25 33:5,7 40:22
    42:18 60:3,6,8 64:8,10 67:6 69:16
    69:16
**administer** 3:14 4:8
**admitted** 24:20,22
**adversary** 8:6
**advertise** 16:16
**advice** 73:4
**affairs** 46:9
**affiant** 47:23 56:2
**affidavit** 21:15 47:15,19,23 48:2,6
    48:12 55:19,23 56:2 59:25 65:22
    67:16,19,22 68:17,19 69:6,10
    70:5 76:24 77:5,7
**affidavits** 21:19,23
**affiliated** 11:18,22 12:5,6,13
**affirmation** 44:11,16 45:8,17 46:16
    46:22 70:4 76:17,18,22
**aforesaid** 78:7
**Agency** 4:13
**ago** 7:13 32:5
**agree** 5:4 14:12 39:16
**agreed** 3:4,8,12 4:3
**agreement** 18:18 28:16 29:5 32:3,5
    32:25 33:16,22,25 34:5 41:5,8
    76:12,15
**agreements** 33:4 70:8
**ahead** 14:16 45:21
**Alberto** 52:24
**alcohol** 7:2
**aliases** 70:17,21
**allegations** 70:19
**ambiguity** 27:21,22
**amend** 52:17
**amendments** 33:25
**Amshen** 69:5 73:13,23 74:3
**Anderson** 2:13 11:11,18,22 12:7,13
    12:17 13:5,7,12,20 14:9 15:5,19
    21:17 22:12,22 23:3,24 24:7
    45:25 46:4,7,25 50:12,16 51:7
**Anderson's** 22:24
**angry** 8:5

**answer** 6:8,16,17,18 11:3 12:3 16:9
    23:9 24:3,5 26:14 36:19,24 42:15
    42:16 56:20 57:14 59:13,15 64:13
    77:6
**answered** 44:4
**answering** 43:22
**answers** 36:21 75:13
**anybody** 16:9 23:9 24:5 30:6 31:9
    44:25 61:23 65:19 72:6,25 73:9
**anyway** 27:19
**apologize** 32:10
**appeal** 35:24 50:8,19 76:25
**appear** 8:19
**appearances** 14:14 53:21
**appearing** 5:7
**appears** 29:8 35:14
**appellate** 36:2
**application** 52:19
**appropriate** 10:3
**approximately** 30:13
**April** 29:19
**area** 16:5
**arrested** 7:20
**asked** 62:24 66:22 67:3,5,14
**asking** 19:4,8 22:24 27:11 39:2
    49:15 53:19 56:21 62:9 68:2 73:3
**asset** 68:25
**assigned** 32:12
**associate** 24:14,15
**Associates** 22:18
**association** 22:4 45:23 47:21 52:24
**assume** 31:21 50:20 58:23
**assumes** 20:16,17 31:6 33:2 34:24
**assuming** 17:6 20:9 67:11
**attend** 9:25 54:23
**attended** 53:15,22
**attending** 52:22 53:20,24
**attorney** 6:3 9:20,22,24 22:2 24:20
    63:4 65:15 73:12
**attorneys** 1:18 2:4,8 3:5 5:4 14:25
    24:16 32:12 73:20
**August** 46:7
**authorized** 3:14
**available** 74:20
**Avenue** 1:18 2:4,5 6:3 60:4
**Avi** 73:9
**Avistedek** 25:15,17,19,25 72:4
**aware** 28:6 48:23 73:6,8

**B**

**B** 5:14 44:7,15,16 76:10,17 77:1
**B-O-W-M-A-N** 6:24
**back** 11:21 17:20 20:11 21:25 25:4
    25:9 32:11 33:19 34:22 36:23
    37:7,12 39:11 44:6 53:13 54:19
    56:19 57:7,22 58:7 63:17 67:18
**background** 32:17
**Bailey** 35:23

**bank** 35:12,14
**bankruptcies** 62:8
**bankruptcy** 1:2 62:5,9,11,16
**bar** 22:4
**Barr** 60:4
**based** 35:22 40:5
**basically** 68:3
**basis** 19:10 49:14
**basket** 10:15
**Bates** 43:6
**Bee** 4:13
**behalf** 43:19 44:3 62:6,16
**belief** 5:7
**believe** 8:6 9:8 13:9 16:17 24:21
    36:12,16 61:10 62:13 63:23
**believed** 30:19
**best** 5:6 60:9
**better** 37:5
**big** 34:4
**bill** 10:10
**bills** 34:17 58:21
**Biolsi** 2:8,10 5:5,9 9:3,21 10:2,13
    10:18,19 13:9 14:3,8 17:6 20:8,15
    22:5,7,9 27:15 28:17 30:8 31:6,22
    32:7 33:2 34:18,24 37:23 38:14
    38:16,22 39:16 40:12 43:22 44:21
    48:7,13 49:6,13,20 52:8 54:25
    56:16 57:12 58:10 60:17 61:18
    62:21 63:5 66:3 67:24 68:5,19
    73:3,18,21 74:17
**birth** 40:20
**bit** 9:4 27:3 38:6
**black** 34:4
**blank** 64:15
**blood** 78:16
**boilerplate** 34:6
**bottom** 43:6
**Bowman** 1:17 5:8,21 6:1,24 7:1 8:1
    9:1 10:1 11:1,9,11,19,23 12:1,7
    12:13,14,14,15,17,17 13:1,5,8,12
    13:20 14:1,9 15:1,18 16:1 17:1
    18:1 19:1 20:1 21:1,17 22:1 23:1
    23:24 24:1 25:1 26:1 27:1 28:1
    29:1 30:1 31:1,23 32:1 33:1 34:1
    35:1 36:1 37:1 38:1,7 39:1,2 40:1
    41:1 42:1 43:1 44:1 45:1 46:1,2,4
    46:7 47:1,2 48:1 49:1 50:1,12,16
    51:1,7 52:1 53:1,21 54:1 55:1
    56:1 57:1 58:1 59:1 60:1 61:1
    62:1 63:1 64:1 65:1 66:1 67:1
    68:1 69:1 70:1 71:1 72:1 73:1
    74:1 75:9,18 76:5
**boy** 44:7
**break** 10:23,24 11:4 32:21
**bring** 15:22
**bringing** 16:13
**Broadway** 2:9
**brought** 64:3

**bunch** 31:7
**business** 5:23 12:24 42:8,9,11

**C**

**C** 2:2 45:5,6,8 75:2 76:18 78:2,2
**C-O-H-A-N** 28:2,5 29:17 37:20
  44:23 45:22 46:3 47:20,24 49:4
  50:17 52:14 54:6 56:3,13 57:11
  57:24 58:19,22 59:3 60:7 61:17
  61:25 62:10 71:19,20 73:24 74:3
**C-O-H-E-N** 27:8,12 37:20 40:11
  56:10,11,13,25 57:21 58:4,6,13
  58:15,19 59:20 60:15,24 61:14
  62:6 64:4 70:18 71:5,14,16 72:11
**C-O-H-N** 37:19 46:18 47:3,4,10
  51:24 52:15 58:10,11 62:15 70:3
**calendar** 21:8
**call** 15:17 17:3,7,9,24 18:17,23 71:4
  72:22,23,25
**called** 5:15 26:9 27:4 52:23 72:2
**caller** 72:13,18
**calls** 72:16
**caption** 52:17 53:16
**card** 61:8
**case** 1:5 7:14 8:13,16,19 9:2,7 10:20
  14:15 15:7 17:14 20:4 21:14 25:5
  31:20 35:19 36:2 44:19 45:22
  46:2,17 47:2,20 50:13 51:6,8,21
  51:23 52:13,23 65:23 66:11,13,21
  66:23,24 67:2 68:23 69:4,10,19
  74:11
**case-by-case** 19:10
**cases** 7:10 15:4,6,12 23:4 28:8
  30:14 34:9,13 36:16 37:17 41:22
  57:3
**cause** 46:17,24 76:23
**Centre** 53:17
**cents** 39:3
**certain** 8:12 21:8 28:8 36:2 38:8
  41:21 51:5
**certify** 75:9 78:5,15
**chance** 20:23 40:20 50:18
**changed** 52:19
**charge** 15:5 23:3 62:3 66:25
**check** 34:19 35:7,11,13,17 66:8
  68:3 76:13
**checks** 70:8
**chief** 14:12,22
**children** 42:5 64:24
**circumstances** 19:20,22,23 21:2
**Civil** 4:5
**clarify** 21:4 56:11
**clarity** 39:5
**clear** 10:16 56:7 66:11
**client** 17:3,22,25 18:5,21 19:17,21
  19:24 20:2,3,12 21:12 23:4 29:12
  29:13 32:15 33:5 57:13 68:23
  69:2 73:18

**clients** 13:4,19 14:20,25 15:23,23
  16:2,14,22,24 18:25 21:19,22
  23:13,15 24:9,11 32:13 58:16
  65:10 73:16
**close** 46:8
**closed** 12:5
**Cohan** 27:25 28:5 29:17,22,24 30:7
  30:11,16,18,19,22 31:2,5,10,15
  31:18 32:3,16,25 33:18,21 34:11
  34:14,16 37:15,19 38:23 44:23
  45:22 46:3 47:20,24 49:3 50:16
  52:14 54:6,9,10 56:3,10,13 57:11
  57:17 58:3,19,22 59:2 60:7 61:4
  61:17 62:10 70:25 71:18,20 74:3
**Cohen** 27:8,12 37:20 38:23 40:10
  40:14,18,20 41:13 42:3,6,9,12,19
  43:11,13,19 44:3 55:7 56:9,12
  57:2,10,21,24 58:4,6,13,15,19
  59:20 60:15,22,23 61:14,25 62:6
  64:3 70:14,18 71:5,14 72:9,11
  73:24
**Cohn** 37:19 38:23 46:18 47:3,4,10
  58:8 62:15 70:2
**colleague** 73:15
**colleagues** 9:21
**collections** 7:13
**come** 21:22 57:7 58:8 65:11
**commencement** 78:10
**communicate** 30:25 32:3
**communicated** 31:5,10,12,13,15
**company** 13:7 26:8 27:4
**complaints** 20:7
**complete** 75:12
**completing** 43:24
**concerned** 16:3
**concerns** 68:7
**concluded** 66:12
**conclusion** 66:13
**conducted** 4:6 70:5
**conference** 1:19 4:12 5:8
**confirm** 52:12
**consent** 4:17
**consider** 9:23 73:14
**considered** 4:18
**consult** 17:13 18:4
**cont'd** 77:1
**contact** 16:20,22,25 23:12 24:8
  57:4
**contacted** 58:4 73:6
**contract** 7:18
**contracts** 7:18
**control** 4:13 33:12
**controversy** 78:18
**conversation** 17:5 74:6
**convicted** 7:22
**copy** 61:7 67:22 74:19
**Corp** 1:7 9:11 25:7,12,20 35:15
**corporation** 12:4

**correct** 6:13 16:23,24 40:13 47:13
  57:8 75:12,14
**corrected** 52:20
**corresponded** 65:17
**counsel** 4:3,10,22 78:19
**Counterclaims** 59:14 77:6
**country** 65:2
**County** 48:24 75:5
**course** 5:10
**court** 1:2 2:14 4:7,23 6:12,19 31:22
**cover** 66:25
**covers** 34:6
**creditor** 6:3 28:14,15 35:7 39:23,24
  41:4 43:2 44:16 45:6,8 46:22
  47:15 50:8,25 51:15 53:7 55:19
  59:13,25 70:11 76:11
**Creditor's** 44:15 50:6
**crime** 7:23
**crux** 27:19
**cues** 6:18,20
**currently** 11:6 34:10 37:15

**D**

**D** 5:14 6:1 7:1 8:1 9:1 10:1 11:1
  12:1 13:1 14:1 15:1 16:1 17:1
  18:1 19:1 20:1 21:1 22:1 23:1
  24:1 25:1 26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1 34:1 35:1
  36:1 37:1 38:1 39:1 40:1 41:1
  42:1 43:1 44:1 45:1 46:1,11,21,22
  47:1,13,14,15 48:1 49:1 50:1 51:1
  52:1 53:1 54:1 55:1 56:1 57:1
  58:1 59:1 60:1 61:1 62:1 63:1
  64:1 65:1 66:1 67:1 68:1 69:1
  70:1,6 71:1 72:1 73:1 74:1 75:2
  76:2,22,24
**Danielle** 2:6 6:2 28:17 68:22
**date** 1:20 5:3 21:8 29:6,18 40:20
**David** 25:14,17 27:7,12,25 28:5
  29:16,22,24 30:7,11,15,18,19,22
  30:25 31:5,10,15,18 32:3,16
  34:10,14,16 37:15,19,19,20 44:23
  46:3,17 47:3,4,10,24 49:3 51:24
  52:14 56:3,10,13,25 57:11,16,23
  58:3,3,8,18,22 59:2 60:7 61:17,24
  62:10,15 70:2 71:14,15,18,20
  72:4 73:24 74:3
**day** 16:4 75:20 78:21
**day-to-day** 27:18
**deal** 23:6
**deals** 23:5
**debtor** 1:8 25:7
**December** 52:24 53:17,22 54:23
**Defendant's** 45:9 46:23 76:19,23
**defendants** 44:23 46:18
**defendants'** 45:18 46:17
**defined** 19:22
**deliver** 57:6

**delivered** 70:9
**department** 62:3
**depend** 20:25
**deposed** 7:11 74:12
**deposition** 1:17 3:13,17 4:6 6:4,7,11
7:5,16 8:22 9:15,18,25 10:20 12:2
25:25 37:24 41:11 68:14 75:11
**describe** 14:11
**determination** 52:13
**determine** 20:13
**Development** 26:18 44:24 45:2
**Devico** 68:24 69:12
**dial** 71:19
**dialed** 71:2,7,13 72:3,10
**dialing** 71:23
**Dick** 35:22
**different** 19:7 51:10 69:20
**directly** 23:15 24:11 78:17
**disciplinary** 22:3 25:2
**discuss** 10:20 41:21
**discussed** 12:8 37:10
**discusses** 18:21
**discussing** 69:4
**Discussion** 7:15 11:13 14:4 31:25
36:22 42:10 55:15 57:9 71:10
**Dismiss** 45:11,19 76:21
**dismissed** 8:7
**disregard** 42:15
**DISTRICT** 1:3
**DMV** 39:21,24 54:19 76:14
**document** 29:4,7,9 35:9 40:9 45:5
45:13 46:14 47:17 50:10,15 51:4
51:17 52:16 55:21 56:17
**documents** 26:20,22 31:17,17 49:12
57:6 70:12 77:8
**door** 20:24
**drafted** 31:17
**drive** 63:7 70:6
**drugs** 6:25
**duly** 5:15 78:9
**Dustin** 1:17 5:8,21 6:24 27:8 53:21
75:9,18
**Dustin's** 68:20

---

**E**

**E** 2:2,2 50:3,4,6,7,8,22 75:2,2 76:2
76:10,25 77:1 78:2
**E-L-I** 40:12 60:12
**easier** 39:13
**EASTERN** 1:3
**easy** 21:6,10
**effect** 3:15
**efficiently** 38:7
**either** 10:14 12:15 17:18 60:22
**Eli** 40:10,14,18,20 41:13 42:2,5,9
42:12,18 43:11,13,19 44:3 55:7
56:9,12 57:2,4,6,10,13,21 58:4,6
58:9,13,15,19 59:20 60:12,23

61:4,14 62:6 64:3 70:14,17,25
71:4 72:9,11
**email** 18:24 19:5,13 65:17
**emails** 37:7
**employ** 24:16 78:19
**employed** 11:6,8,9,9 22:15 23:21
**entail** 14:6
**entire** 66:13
**entities** 12:10
**entity** 12:12,20,25 13:23
**entry** 50:25 51:5 77:2
**ESQ** 2:6,10
**established** 55:4
**Estates** 26:3,6,9,11,15 27:5 35:15
36:5 56:5
**event** 49:18
**events** 9:2 31:7
**everybody** 15:20 28:20
**evidence** 10:25
**exactly** 19:8 74:8
**EXAMINATION** 5:18 76:4
**examined** 5:16
**example** 38:23
**exception** 10:25
**execute** 21:19
**executed** 31:19 48:5,12 57:7 68:16
68:19
**execution** 29:14 31:18
**exhibit** 28:12,14,15 35:3,5,7 37:25
38:5,12,20 39:8,9,10,20,21,22,23
39:24 41:3,4 42:24 43:2 44:7,15
44:16 45:5,6,8 46:11,21,22 47:15
50:3,4,6,6,8,22,24,25 51:13,14,15
53:4,7 54:20 55:17,18,19 59:10
59:11,12,13,23,24,25 69:23 70:11
76:11
**exhibits** 8:23 9:16 39:15
**existence** 12:4
**expeditious** 39:4
**explain** 64:15
**explore** 37:25
**express** 4:17

---

**F**

**F** 50:24,25 77:2 78:2
**face** 29:9 52:16
**face-to-face** 23:12 24:8
**fact** 5:8 21:7 31:18
**facts** 17:14 20:3,7,12,21,23,24 21:5
21:10
**faith** 49:14
**familiar** 6:6 27:4 43:9 51:21 60:3
70:17
**family** 56:15,21
**far** 6:14 10:12 16:3 36:17 37:8 55:9
60:20 61:15 62:17 71:21,25 72:5
**faster** 27:3
**Federal** 4:4 45:23 47:20 52:23

**fee** 34:7 66:25
**feel** 6:9 28:21
**feeling** 6:5
**fees** 36:2
**figure** 13:18
**file** 35:5 37:22 62:7,11 66:13,16,18
67:23 68:3,13 69:14
**filed** 48:24 59:15 62:5,16
**files** 70:7
**filing** 3:6
**filings** 62:12
**fill** 64:16
**film** 61:19
**find** 9:20 15:25 57:16 68:15
**fine** 10:9 14:2,19 19:15 21:3 25:3
28:21,23 29:11 39:6 44:5 61:3
63:3
**finish** 11:2,3 15:12 67:2
**finished** 69:21
**firm** 11:14 12:19,21 13:10,11 14:13
15:2,17,18 16:6,10,16 17:21
21:16,16,18 22:15,17,20 23:5,7
23:10,21,23 24:6,17 29:25 30:7
31:4,10 32:12 34:10,14 37:18
44:22,22 56:5 61:21,24 65:13
68:20
**firm's** 16:13
**firms** 49:11
**first** 5:15 7:12 12:9 17:3,7 18:13
27:16 37:25 62:24
**fishing** 41:6
**Five** 32:9
**flat** 66:25
**focus** 9:3,4
**following** 11:25
**follows** 5:17
**force** 3:15
**foreclosure** 15:6,7 23:4
**forgot** 31:23
**form** 3:9
**formation** 11:17
**forward** 25:23
**found** 37:18
**foundation** 49:6
**free** 6:9
**friend** 9:23 73:15
**friendly** 10:8
**front** 9:9 26:21 66:23,25
**full** 12:2
**further** 3:8,12 4:14 45:9,17 76:18
78:15
**future** 5:3

---

**G**

**G** 51:14,15 53:4,6,7 63:6 75:2 77:3
77:4
**Gardens** 5:24,24
**gather** 32:16,17

**gears** 59:5
**general** 14:20
**generally** 32:16 33:4
**generated** 43:10,12
**getting** 37:4
**gift** 10:15
**Gill** 11:11 12:7 14:10 15:19 21:17
**give** 10:15 12:2 33:11 39:4 49:16,22 73:4 74:11
**given** 29:13,16 57:20 75:14
**gives** 43:7
**giving** 9:13
**go** 9:13,14 13:24 14:16 16:12 17:10 17:18 26:24 27:2 32:20 36:23 37:6,12,17 38:12,19 39:4,8,11,14 39:15 44:6 45:21 53:13 55:12 62:14 67:18
**goes** 15:8
**going** 6:4 14:5 21:25 22:11 23:19 25:4,22,23,24 26:13,22,23 27:23 27:24 28:11 32:11 37:14,21 38:19 39:6,7,20 42:23 53:3 54:17 56:10 59:5,6 62:14,23 63:9 64:14 67:17 72:14
**good** 14:3 39:5 49:14 74:17
**Googling** 63:5
**gotten** 34:25
**great** 27:19
**GROUP** 2:8
**guess** 17:10 22:2 31:16
**guessing** 49:7
**guy** 57:2
**guys** 10:7 28:22

**H**

**H** 55:17,18,19 76:10 77:1,5
**hallway** 54:6,11
**hand** 78:21
**handle** 15:12 19:11
**handled** 30:14 33:14 61:13,16,24
**handling** 69:20
**happen** 40:19
**happened** 21:7
**happens** 66:14
**happy** 64:16
**hard** 54:16
**HASBANI** 2:4
**he'll** 10:14
**heads** 63:10
**hear** 27:8
**heard** 26:5,8
**hearing** 15:8 52:22 53:14,20,22,24 54:8,13,23 55:10,10
**hearings** 54:14
**held** 1:19 18:16 78:7
**help** 38:9,10,19,24
**helps** 38:16
**hereunto** 78:20

**Hold** 22:5,7
**holding** 32:7
**honestly** 55:2
**hoping** 38:5 39:18
**Hoschander** 59:16
**housing** 66:24
**hundred** 8:12

**I**

**ID** 58:25 72:13
**idea** 72:24
**identification** 18:12 28:16 35:8 39:25 41:5 43:3 44:17 45:12 46:24 47:16 50:9 51:2,16 53:8 55:20 59:2,14 60:2 70:13
**identified** 45:24 46:19 51:6
**identify** 38:25
**identity** 27:21
**Ilan** 25:14,17,19 72:4 73:9
**impair** 7:2
**import** 34:7
**in-person** 47:7
**include** 32:25 33:5 34:3
**included** 33:8
**incoming** 72:18
**independent** 49:17 50:14
**Index** 45:24 51:19 55:24
**indirectly** 78:18
**individual** 40:10 68:23
**information** 32:17 40:3 57:20 64:16 76:7
**initial** 16:19 17:13,24 18:4,16,22 70:15
**INSERT** 64:18 76:8
**instruct** 72:25
**intake** 17:22 18:17
**interested** 78:17
**Intern** 2:14
**Internet** 9:10
**introduce** 58:15
**introduction** 9:14 58:9
**investor** 69:21
**invoices** 43:2,4,9,10,12,15 66:2,4,6 66:17 76:16
**involved** 14:24
**ironically** 69:13
**irony** 5:9
**issue** 54:7
**issued** 66:18

**J**

**J** 42:25 43:2 76:16
**J-A-A,K-O-V** 48:16
**Jaakov** 48:16,18,20,23 49:4,9,10
**January** 72:21 73:7
**John** 69:17
**John's** 69:16,18
**joint** 73:16,18

**judge** 52:13,17
**judgment** 45:10,18 51:15,19,25 76:20 77:3
**June** 46:7

**K**

**K** 59:11,12,13 75:2 77:6
**Kadochnikov** 11:12 12:7 14:10 15:19 21:17
**keep** 27:23 47:6 65:10
**keeping** 36:15
**Kew** 5:23,24
**kind** 7:10 13:7 54:16 56:21 62:25
**Kings** 48:24
**knew** 57:19
**know** 6:22 8:13,18 10:2,6,11 11:23 14:12 15:10 17:3,10,11,12,23 18:6 20:16 22:12 23:17 24:2 25:6 25:11,14,17,18,19,21 26:4,7,12 26:14,15,16,19 27:6,7,11,13,14 27:24 28:3,4,8,9,9,22 29:15,23,24 29:25 30:2,3,5,12,13,17 31:4,9,11 31:14,20 33:9,23,24 34:2,4,9,13 34:16 35:2,10,12,16,16,19,23 36:3,4,6 37:11,16 38:18,24 40:8 40:10,19,22,24 41:17 43:15,17,18 44:8 45:3 46:11 47:9,11 48:4,8,11 48:13 49:3,5,9,10 50:14,18,20,21 51:9 52:3,18,21 53:12,13 54:15 55:2,3,5,24 56:9,14,15,20,23,25 57:2,3,18 58:5,12,14,14,17,18,23 58:24 59:4,18,19,21 60:21 61:4,6 61:10,23 62:2,7,18 63:12,19,22 63:25 64:2,5,9,12,14,21,23,24,25 65:2,3,4,7,16,18,19,21,24,25 66:3 66:5,7 67:3,8,9,12,12,16 68:13,13 69:25,25 70:14,16 71:3 72:14,22 73:9,12,14,23,25 74:14
**knowledge** 5:6 21:11
**known** 23:25
**knows** 49:10 68:8

**L**

**L** 59:23,24,25 75:2 77:7
**L-A-O-R** 59:8 71:24
**labeled** 39:21 44:7 45:5 46:10 50:3 50:24 51:14 59:11 69:23
**landlord** 63:24
**language** 34:7
**Laor** 59:17 71:24
**large** 10:15
**law** 2:8 4:19 11:14 12:19,21 13:10 13:11 14:25 15:17,18 16:6,9 21:15,16 22:20 23:5,7 24:17 31:4 31:10 32:11 34:9,13 36:7,13 37:18 44:22 47:6 49:11 56:5 59:15 61:21,23 65:13
**lawsuits** 7:25

**lay** 26:23
**leave** 28:24 64:15
**left** 13:22
**legal** 20:20 34:17
**let's** 18:7,22 20:19,20 52:3
**letter** 39:17
**lettered** 39:18
**life** 39:13
**Light** 2:4,6 5:19 6:2 10:6 14:2,9
   17:8 20:11 28:13,19 31:8 32:22
   33:10 34:20 35:4 37:9,21 38:11
   38:15,18 39:5,6,19 42:24 43:24
   44:14 45:4 46:20 47:14 48:9 49:9
   49:19,21 50:5 52:11 53:5 55:5,14
   58:11 61:20 63:3,8 67:3 68:2,11
   68:21,25 69:8 73:5 74:13,18 76:5
**likes** 68:6
**line** 22:11 26:23 54:4,5 72:17
**listed** 33:21 35:4 70:23
**Lists** 70:24
**litigant** 8:6
**litigated** 30:15
**litigation** 4:20 16:7 74:7
**litigator** 14:13,23
**little** 9:4 27:3 38:6
**lived** 57:11,17,19
**lives** 42:21
**LLC** 22:19
**LLP** 12:7,10 22:19
**locate** 43:13 63:2 64:16
**located** 70:8
**locations** 4:10
**log** 34:4
**long** 7:13 11:16 23:25
**longer** 12:4
**look** 21:8 28:20,25 39:12 40:2,4
   54:25 55:7 68:13 70:22
**looked** 54:18
**looking** 51:10,12 56:16 63:6 66:9
   66:16 68:9 69:24
**looks** 66:12 68:6 69:3
**lost** 8:7 15:13,13
**lot** 23:5 39:13 49:11
**LTE** 44:24 45:2
**luxury** 38:2

**M**

**M** 5:14 38:12 69:23 70:11 75:2 77:8
**M-A-O-R** 60:12
**M&Q** 27:5 56:5
**Mail** 60:2 77:7
**mailed** 19:13
**mailing** 33:5
**making** 70:20
**management** 23:5 36:8,14
**manager** 22:16 69:2
**manner** 4:16
**Maor** 60:12

**mark** 2:13 22:12,14,22,24 23:3
   24:7 50:6
**marked** 28:12,14,16 35:6,8 39:9,22
   39:25 41:3,5 43:2 44:15,17 45:6
   45:11 46:21,24 47:16 50:9 51:2
   51:15 53:6,8 55:18,20 59:12,14
   59:23,23 60:2 70:12
**marriage** 78:17
**married** 64:22
**Mary** 69:23
**MASIN** 2:14
**math** 32:8
**matter** 56:5 78:18
**matters** 30:14,14,15 33:13,15,21
   37:15
**Matthew** 23:17 47:9
**Maureen** 1:20 33:10 39:8 78:4,24
**McCormick** 1:20 78:4,24
**mean** 11:25 14:24 15:18 20:19
   31:12 34:18 48:7 49:13 56:7 64:9
   64:9 66:19 67:12 73:22
**meaning** 30:15 48:13 68:14
**media** 9:11
**medication** 6:25
**meet** 10:19 17:17,25 18:4,8 19:17
   19:21,24 22:14 23:20 27:17 41:13
   41:20,23 42:11 47:4 48:18 57:23
   64:6
**meeting** 4:12 17:17 18:8 30:18
**meetings** 47:7
**memo** 35:22
**memories** 7:7
**memory** 27:18
**mention** 72:7
**mentioned** 7:25 69:12
**mentioning** 38:22
**met** 10:22 18:15 28:10 41:16 42:2,5
   42:8 44:25 47:10 49:4 59:17
   60:22,25 61:2 63:25 65:20
**middle** 10:25 70:15
**Minnesota** 24:24
**minute** 59:6
**miracle** 16:4
**mistakes** 6:13
**moment** 13:25
**money** 34:19
**monitor** 28:25
**Morales** 52:24 54:9
**Mortgage** 45:23 47:21 52:23
**Motion** 45:9,11,18,19 76:19,21
**motions** 8:8
**move** 15:15 38:6
**multiple** 51:11
**MyCase** 36:7,15,16 37:5 43:8,8

**N**

**N** 2:2 5:14,14 37:25 38:5,14,15,20
   39:8,9,10,20,21,22,23,24 54:20

75:2,2 76:2,14 78:2
**name** 5:20 6:2,23 8:16 11:24 12:14
   22:17 23:18,23 25:6,23 26:5
   27:12 28:5 35:16 40:6,8 48:4,11
   48:15 49:22 52:14,19 59:7,8
   62:19 63:2,7,10,13,16,19,20 65:4
   65:5,7,8 68:8 69:7,12,13 72:19
   73:12
**named** 25:14,17 27:7,25 60:12,15
   60:22 62:18 63:12,15 73:9
**names** 27:18 28:7
**Nancy** 38:15
**National** 45:23 47:21 52:23
**necessarily** 20:10,18
**need** 10:23 21:15 74:21
**needed** 33:3 58:2,3
**never** 19:24 60:8 69:6 71:15,21,25
**new** 1:3,21 2:5,5,9,9 5:24 15:23,25
   16:14 17:22 24:20 32:15 53:17,17
   60:4 75:4 78:5
**Nine** 24:18
**non-verbal** 6:18,20
**normal** 48:17
**normally** 15:25
**Northfield** 1:7 8:17 9:11 25:7,11,20
**notarize** 49:12
**notary** 1:20 5:16 48:5,11,25 75:23
   78:4
**note** 74:14
**noted** 74:22
**notes** 65:10
**notice** 50:8,25 51:5 76:25 77:2
**number** 32:18 42:14 61:5,9 64:11
   70:24 71:8,11,12,13,19,23 72:3,7
   72:10,17 73:2

**O**

**O** 5:14 75:2 78:2
**oath** 3:15 4:8 75:11
**object** 10:4 20:8 31:6 67:18
**objection** 5:2,3 9:4 33:2
**objections** 3:9
**obstructionist** 10:5
**obtained** 61:7
**occasions** 19:14 41:20
**occurred** 49:18
**offered** 10:13
**offhand** 64:10
**office** 18:10 21:23 33:20 34:3 36:4,7
   36:8,13,13,25 41:24 47:6 49:12
   52:18 57:5 62:6,11,15 65:16,20
   70:7,9,23 72:13,16,17 73:2,7
**officer** 3:14,16
**offices** 59:16
**oftentimes** 37:6
**okay** 11:4 15:19 19:9 20:19 21:3,13
   21:21 22:9 26:25 28:11,19 44:5
   49:20 54:21 57:22 61:3 63:4 73:5

**once** 8:5 18:15,20
**open** 12:22 13:23 37:22 39:20
  42:24 44:8,10 45:4 46:10,13
  47:12,14 50:3,23 51:13 53:4
  54:19 55:17 59:10 69:22
**opened** 44:9 46:6,12
**opening** 66:15
**operating** 13:12,14 46:5
**opportunity** 6:12
**opposition** 44:12,17 45:10,19 46:16
  46:23 76:17,20,22
**order** 1:19 26:24 34:19 46:17,23
  76:23
**outcome** 50:18
**oversee** 14:20 15:4
**owner** 25:6
**owns** 25:11,20 26:15

**P**

**P** 2:2,2
**P-E-T-R-O-F-F** 69:5
**P.C** 2:4,8
**p.m** 1:12 74:22
**page** 47:25 52:4,5 53:9,13 54:2,3
  76:4,11
**paid** 43:16 65:25 66:20
**Paragraph** 52:5
**paralegal** 18:19,23 19:6
**part** 15:16,22 18:11 43:5
**participating** 4:11
**particular** 25:5 28:9
**parties** 3:5 4:4,17 78:16
**partner** 11:14,16 14:7 15:17 16:9
  23:7,22 42:8,11 61:21
**partners** 42:9
**party** 57:8
**pay** 10:15
**paying** 9:24 10:7,10,11 34:25
**payment** 10:12,13 11:11 36:17 37:5
  58:21 66:18,22
**payments** 36:5,10,14 37:2,6 43:19
  43:21,25 68:18
**pays** 34:16
**PDF** 53:10 54:3
**people** 20:24 27:17 28:6 49:11 55:2
  73:20
**percent** 8:12
**perfect** 37:8
**performance** 7:17
**permission** 13:24
**permitted** 4:7
**person** 17:17,25 18:4,8,12,16 19:12
  19:12,18,21,24 21:23 28:10,10
  30:20 31:14 40:6 41:13 48:14
  54:22 59:17 60:23 64:6 65:4,7,20
  71:22 72:2
**personally** 10:22 19:5 22:2 70:5,7
**Petroff** 69:4

**phone** 16:4,15,18,21 17:24 18:16
  18:22 32:18 42:14 64:11 70:24
  71:4 72:7,21,23 73:2
**physical** 70:7
**physically** 4:24
**picks** 72:12
**picture** 40:16,17 55:7,8
**pictures** 38:21 40:3,5,17 54:19
**place** 14:8 15:14 17:22 21:18 39:12
  69:18 78:8
**places** 41:23 51:10
**Plaintiff** 46:3
**plaintiff's** 45:11,19 52:14 76:21
**platform** 4:12
**please** 6:9,16,17,18,22,23 11:21
  25:9 29:3 34:22 40:25 41:3,7
  42:25 44:15 45:7 46:11,21 47:12
  47:14,22 48:2 50:3,5,23 51:4,13
  51:14,18 52:6 53:4,6 55:17 59:12
  59:24 63:18 69:22
**PLLC** 11:19,23 12:17 13:5,8,13,20
  46:4 47:2 50:13 51:8
**point** 15:9 21:14 37:18 38:20 57:4
**pointing** 32:4 37:3
**possible** 68:4
**posted** 9:10
**practice** 16:6 24:20,22
**practices** 16:13
**preparation** 9:18 41:10
**prepare** 8:21 9:15
**prepared** 18:20,23
**prepares** 18:17
**preparing** 32:2
**presence** 4:25
**present** 2:12 4:4 55:16
**presents** 20:13
**previously** 7:11 9:6 55:6
**primary** 16:5
**printing** 36:2
**privilege** 34:3
**privileged** 57:12
**probably** 6:4 26:14 66:17
**problem** 32:22
**procedure** 4:5 21:18
**procedures** 16:13 17:21
**proceed** 54:7
**proceeding** 63:24 78:6
**proceedings** 22:4
**process** 18:11
**produce** 57:5,5
**professionally** 41:21 56:24 59:19
**pronounce** 11:24 12:16
**proofs** 66:18
**proper** 68:9
**property** 16:7 67:6 69:15,16
**prospective** 16:22,24 17:2,22 18:5
  18:21,25 29:13
**public** 1:21 5:16 48:5,12 75:23 78:4

**purportedly** 29:16
**purpose** 4:19
**pursuant** 1:18 4:4
**put** 49:23

**Q**

**Q&O** 26:9,11,15,17 35:15 36:5
**question** 3:10 5:10 6:9,21 10:3 11:2
  11:5,10,20 13:15 14:5,21 15:13
  15:14 16:19 19:20 25:9,16
  34:22,23 36:19,21 37:13 42:16
  43:23,25 44:4 48:10 49:7,14
  54:16 56:12 57:15 62:25 63:17
  68:16 71:18 72:18
**questions** 6:7,16 23:19 38:20
**quiet** 15:5,7

**R**

**R** 2:2 78:2
**R-A-M-I** 59:7
**R-O-U-T-H** 23:18
**Rami** 59:7,17 71:24
**rare** 19:14
**read** 6:12 11:21 25:9 34:22,23
  37:12 48:14,15 52:6,9 63:17
  75:10
**ready** 54:6
**Real** 16:7
**really** 28:23 34:12 35:2 50:21 56:7
  59:18 61:6
**reason** 12:3 13:22 19:10 24:25,25
  32:24 33:7
**recall** 30:18 42:13 43:20 54:10,13
  54:22 60:25 61:2 64:7 65:9 67:21
  67:24 72:5,20
**recalled** 53:20
**receive** 11:11 58:21,25 67:19
**received** 36:4 67:16 72:21
**Recess** 32:23
**recognize** 35:9
**recollection** 30:24 41:11 42:4,22
  50:15 53:23 55:9,10 56:4,6,8
  57:19 60:10 62:22
**record** 4:22 6:19,23 7:15 11:13
  13:17,25 14:4 31:25 32:20 36:22
  39:23 42:10 49:24 52:7,9 55:12
  55:15 57:9 64:15 66:14 67:18
  68:5 71:10 75:13,14 78:13
**recorded** 4:15
**recording** 4:16
**records** 39:21,24 47:6 66:10 76:14
**redacted** 40:3,9
**redo** 39:17
**refer** 25:22,24 71:11
**referred** 30:3,7,11 65:15
**referring** 21:16 22:21 44:21 57:4
  61:18
**reflect** 52:17

**refresh** 62:22
**regarding** 22:25 32:17
**regards** 14:14
**reimbursement** 35:25
**related** 7:16 9:2,6 35:19 36:2 44:25
    45:20,22 47:20 51:19 56:9,12,13
    56:20,22,24 57:2 59:20 78:15
**relation** 55:24 56:15 74:7
**relationship** 10:8
**reliable** 36:18
**remember** 8:11 9:12 32:6 36:24
    37:9,12 38:8,10 47:5 52:22 57:25
    60:20 61:15,22 62:17 67:4 71:21
    71:25 74:8
**reminder** 28:17
**remote** 4:10
**remotely** 4:6
**rendered** 10:13
**repeat** 11:20 25:8 71:8
**rephrase** 6:10,22 13:3 31:8 48:10
    65:14
**report** 48:24
**reporter** 4:2,7,23 5:5 6:19 27:10
    31:22
**Reporting** 2:14 4:13
**represent** 5:6 29:22 33:20,21 34:10
    40:24 44:18 51:23 58:8 67:7
    73:19
**represented** 26:3,11,17 28:8 30:6
    30:10 46:2 47:2 50:13,16 51:8
    59:7 60:11,14 63:23
**representing** 6:3 10:9,18 13:2,4,19
    33:18 37:15 56:5
**represents** 37:19 73:24
**request** 68:12 70:22 74:19
**Requested** 70:12 77:8
**REQUESTS** 76:7
**require** 21:22 65:22
**required** 69:10
**reserved** 3:10
**reside** 5:22
**resolved** 34:14
**respect** 9:22
**respective** 3:5
**responding** 11:3
**response** 42:17 43:13 61:11 70:9,23
    70:24
**responses** 9:6 38:13 43:5 69:25
**responsibility** 20:16,17,20
**responsive** 68:15
**result** 7:13
**retain** 20:2 32:15 66:10,10
**retainer** 18:17,20,23,25 19:12,16
    28:15 29:5,18 32:2,4,24 33:4,16
    33:22,25 34:5 41:4,8 70:2,8 76:12
    76:15
**review** 9:17
**reviewed** 8:23 9:16

**reviewing** 50:15
**rhyme** 19:10
**RICHARD** 2:14
**ridiculous** 72:14
**right** 11:4 12:8 27:18 28:11 34:20
    40:19 43:6 57:4 69:19,19
**ringing** 16:22
**rings** 16:4,15,18
**Road** 5:24
**role** 14:6 15:16,22 22:20,25
**Routh** 47:10
**RQ** 68:11 76:9
**Rule** 4:5
**rules** 6:5,14 11:25
**rush** 74:21

——————————————
S
**S** 2:2 5:14 76:10 77:1
**S-A-M-U-E-L** 60:15
**S-H-A-R-A-N** 63:16,20
**S-H-A-R-O-N** 62:19 63:13
**Samuel** 60:15,22
**saw** 41:10
**saying** 12:13 38:8 39:7
**says** 21:7 35:22 53:15,16
**SBAGK** 22:25 46:6 66:15
**scan** 66:13
**screen** 28:24
**screens** 51:11
**scroll** 33:12 52:4 53:9 54:2
**scrolling** 68:6
**sealing** 3:6
**search** 61:11
**searched** 70:6
**searches** 70:6
**second** 7:16 32:20 40:17 41:6 55:8
    55:13 59:8
**sections** 34:5
**Security** 61:5,8,8
**see** 21:9 33:15 38:16 40:6 53:13,15
    60:6 62:25 66:17
**seen** 41:8,12 44:11 45:13 50:10
    51:25 60:8 62:3
**send** 18:24
**sends** 19:5,6
**sense** 26:24 44:4 56:21
**sent** 8:23 35:5
**separate** 4:10 12:10
**separately** 28:21
**service** 35:23 54:8 60:2 77:7
**set** 21:4 78:20
**settle** 74:11
**settled** 69:9
**setup** 17:16 32:11
**seven** 32:5
**Seventh** 2:5
**Sharon** 62:18 63:12 64:21 65:17,23
    66:6 67:20,23 69:7,8,9

**sheriff** 48:24 49:15,22,25
**Shiryak** 11:9,11 12:7 14:9 15:18
    21:17
**show** 28:11 33:13 35:3 41:2 42:23
    46:17,23 50:2 53:3 59:22 76:23
**shown** 31:17
**shows** 72:19
**sign** 9:6 21:23
**signed** 3:13,15 8:25 19:17 21:15
    29:16 75:19
**signs** 35:17
**similar** 28:7
**single** 71:9
**sit** 71:3
**six** 54:25 55:2 66:11
**skip** 6:5 14:5
**slander** 8:7
**social** 9:11 61:4,8,8
**sole** 21:11
**somebody** 7:14 10:10 21:7 25:14,17
    27:7,11,25 28:4 30:3,10,19 43:18
    44:2 60:11,14,22 63:12,15 73:4,6
**sorry** 15:13 19:2 20:5 22:8,23 25:8
    26:2 27:9 29:21 30:14 33:11
    36:23 40:25 42:15 44:22 48:9,9,9
    52:3 53:12 55:17 58:7 65:13
**sort** 59:2
**sound** 72:14
**sounds** 16:21
**space** 56:19
**speak** 17:2 23:15 24:11 30:22 58:2
    58:3 66:16 71:20,24
**speaking** 31:13 32:16
**speaks** 52:9,11
**specific** 7:17 32:12,13 71:12
**specifically** 61:19,20
**specifics** 25:5 61:2
**spell** 63:7
**spelled** 27:25
**spelling** 48:17 63:13 68:9
**spoken** 10:21 48:20 49:21,24 71:14
    71:15,22 72:4,6,11 74:2
**spouse** 42:2
**ss** 75:5
**St** 69:16,17,18
**stamp** 48:25
**stamps** 43:6
**staring** 56:18
**start** 15:12 17:14 38:11 39:19 67:2
**Starting** 54:5
**state** 1:21 6:23 24:23 75:4 78:5
**statements** 9:2 61:11
**STATES** 1:2
**status** 49:8
**stenographically** 78:11
**Steven** 2:10 20:5 22:8,18,22 37:11
    67:4,17 68:11 73:13,23 74:2,15
**stipulate** 4:22

**stipulated** 3:4,8,12 4:2,14
**stolen** 48:25
**Street** 53:17 69:17
**Strike** 40:25
**structure** 34:8
**stuff** 23:5
**subject** 22:3
**submitted** 43:4
**subpoena** 9:6 38:12 42:17 43:5,14
   61:12 69:24 70:10,11,23 77:8
**subpoenaed** 8:18
**subscribed** 75:19
**subsequent** 33:25
**substance** 17:4 74:6
**substantive** 14:14
**sued** 8:2,4,5,6,10
**Suite** 2:5,9 5:24
**sum** 17:4 74:5,9
**Summary** 45:10,18 76:19
**Sunday** 21:9
**supervision** 78:12
**support** 45:9,17 47:16,19 55:20,23
   76:18,24 77:5
**sure** 9:9 21:9 22:19 27:17 31:3
   32:22 36:20 38:4,17 41:12 55:14
   66:20,20 67:13 73:21
**suspended** 24:24
**swear** 4:21,23
**switch** 59:5
**swore** 70:4
**sworn** 3:13,16 5:16 78:9
**system** 36:8,14 37:2

**T**
**T** 5:14 75:2 76:10 77:1 78:2,2
**take** 10:23,24 11:4 15:8 17:20
   32:21 40:2,4 57:22 58:7 68:13
**taken** 1:17 3:17 6:25 7:6 32:23
   66:21 75:10 78:11
**takes** 17:7,9
**talking** 17:8,14 27:9,20 38:4,25
   56:14
**telephone** 4:11 30:23 60:23
**tell** 10:24 29:3,6,10 40:5 44:18
   45:16,25 46:14,25 47:17,22 48:4
   50:12 51:3,7,17 55:21 57:10,21
   74:5
**telling** 37:23
**ten** 24:18
**tenant** 63:24
**test** 37:7
**testified** 5:17 55:6
**testify** 7:3 8:14,19
**testimony** 75:10,13 78:6,10,11,14
**Thank** 64:20
**thing** 10:17 25:24
**things** 38:6,9
**think** 17:19 20:15 26:24 29:19 32:8

34:24 38:5 39:3,4 47:12 52:4
   57:13,14 59:9 61:12 62:20,24
   74:13
**thorough** 61:11
**thought** 12:10 27:9
**throw** 9:8 26:20,22 39:10
**throwing** 27:22
**time** 1:20 3:10 5:2 7:13 8:9 10:24
   12:5 17:4,7 18:13 54:14 62:24
   71:9 74:22 78:7
**times** 7:8 41:15
**title** 15:6,7 23:4 24:13
**today** 5:7 7:2 9:25
**today's** 10:20 41:10
**told** 13:9 20:3
**Tompkins** 1:18 2:4 6:3
**top** 53:15
**torturing** 74:9
**track** 36:10,14,15 37:2
**tracking** 36:17 37:5
**transaction** 30:15
**transactional** 61:13,16,24
**transcribed** 78:12
**transcript** 39:12 53:7,14 54:4 74:20
   75:10,12 77:4 78:13
**transfer** 66:15
**traverse** 54:8
**trial** 3:11 15:8
**trick** 13:16
**tricky** 11:10
**trouble** 38:2
**true** 75:12,14 78:13
**truly** 10:2
**truthfully** 6:8
**try** 57:23
**trying** 13:16,18 26:23
**Turn** 47:25
**twenty** 9:22 60:17
**Twice** 7:9
**two** 7:18,25 8:10 33:13,15,21 38:3
   39:3
**typically** 15:8 18:19 66:24 72:17

**U**
**U** 5:14
**unauthorized** 4:18
**unclear** 10:14 40:16
**understand** 6:9,14,21 13:15 14:21
   16:8 19:2 21:13 27:23 70:19,20
**UNITED** 1:2
**universal** 15:9
**use** 36:7,10,15,16,18
**uses** 28:4 36:14,25
**usually** 36:11

**V**
**variations** 62:15 63:9 68:7
**varies** 20:5

**various** 46:18
**vary** 19:9,11
**vendee** 7:19
**vendor** 7:19
**verbally** 6:16
**verified** 20:24
**verify** 20:3,6,12,21,23 21:6,10
**versus** 45:23 46:18 47:20 52:24
**videoconference** 4:9,15
**violation** 4:18

**W**
**W** 5:14 75:2
**Wait** 52:8
**waived** 3:7
**walk** 20:24
**walking** 18:12
**want** 10:4,4,6 14:16 20:8 26:20
   28:23 31:21 32:21 33:11,12 37:11
   37:24 38:11,19 49:23,23 53:13
   54:19 57:14 71:8 74:11,12,15
**wanted** 40:4
**wants** 28:20 29:2 67:18
**wasn't** 7:18 67:13
**way** 12:15 17:18 28:22 36:18 39:4
   39:17 57:6 60:9 66:8
**we'll** 10:24 18:16 27:23 39:19
**we're** 10:25 25:4 31:21 32:7 37:4,4
   37:4 38:4 69:4
**web** 1:19 4:11 5:8
**went** 49:15
**whack** 39:11
**whatsoever** 55:11
**WHEREOF** 78:20
**Winkler** 48:16,17,18,21,23 49:4,10
**wire** 34:20
**witness** 2:8 4:8,9,21,24,25 5:7,15
   22:8 32:9 38:24 40:13 56:18
   60:19 62:23 63:6 68:22 69:3,9
   76:4 78:9,14,20
**woman** 62:18 63:19 67:9,11
**won** 50:20
**Woodmere** 60:4
**work** 11:10 28:23 36:16 61:14,17
   61:24 72:15
**working** 37:4
**works** 28:19
**wouldn't** 10:3 61:2 66:21
**wrap** 69:24
**wrapping** 46:9
**writing** 31:14
**written** 4:17 8:25 35:13
**wrong** 12:14 32:9

**X**
**x** 1:4,9 76:2,10 77:1

**Y**

**Y-A-N-A-Y** 63:13,15,20 65:5,8
**Y-A-R-O-N-A** 65:5,8
**Yaakov** 49:24
**Yanay** 63:20 64:21 65:5,8,17,23
  66:6 67:20,23
**Yanel** 69:12
**Yarona** 65:5,8
**yeah** 17:9 36:21 38:16 57:22 66:9
**year** 7:13 46:8
**years** 9:22 24:19 32:5,9 60:18 66:11
**Yonel** 68:24
**York** 1:3,21 2:5,5,9,9 5:24 24:20
  53:17,17 60:4 75:4 78:5

———————— **Z** ————————

**Zalewski** 11:19,23 22:18 23:24 46:2
  46:4,8 47:2 50:13,16 51:8
**Zoom** 4:11

———————— **0** ————————

———————— **1** ————————

**1** 29:10 35:4,5,7 47:14,15 52:24
  53:4,6,7,17,22 54:23 76:13,24
  77:4
**1:07** 1:12
**10006** 2:9
**10123** 2:5
**10528** 55:25
**111** 2:9
**11405** 5:25
**11598** 60:4
**1408** 2:5
**160840/2017** 51:20
**18-42802-NHL** 1:5
**1951** 35:7 76:13

———————— **2** ————————

**2** 1:12 4:5 53:13 75:11
**2:52** 74:22
**2003** 24:21
**2007** 8:5
**2010** 22:16
**2013** 51:6
**2015** 55:25
**2017** 29:8 52:25 53:18 54:24
**2018** 11:17 45:24 46:5,7,19 66:12
**2022** 1:12 72:21 73:7 75:11,20
  78:21
**21** 54:4,5
**26th** 78:21
**27** 29:8,11,19,21
**28** 4:5 76:12

———————— **3** ————————

**30** 1:7 9:11 25:7,11,20
**320** 60:3
**35** 76:13

**39** 76:14

———————— **4** ————————

**41** 76:15
**43** 76:16
**44** 76:17
**45** 76:18
**450** 2:5
**46** 76:22
**47** 76:24

———————— **5** ————————

**5** 54:3 72:21 73:7 76:5
**50** 41:17,18 54:14 76:25 77:2
**505450** 45:24
**505450/2018** 47:21
**505470** 46:19
**51** 77:3
**513279** 51:6
**53** 77:4
**55** 77:5
**59** 77:6,7

———————— **6** ————————

**6** 52:5 53:9 54:2
**60** 53:16
**600** 5:24
**606** 2:9
**64** 76:8
**66** 70:22
**68** 76:9

———————— **7** ————————

**70** 77:8
**718** 71:8,11,13,19
**718-809-5088** 70:24 71:2 72:8,22
  73:7

———————— **8** ————————

**80-02** 5:23

———————— **9** ————————

**956** 69:18